[No. 7932.]

STADLER V. THE PEOPLE.

CRIMINAL LAW—*Evidence.* To warrant a conviction for the sale of a powder or mixture containing cocaine, the fact that such powder or mixture contained the prohibited drug must be established beyond a reasonable doubt.

The testimony examined and held entirely insufficient to sustain the conviction.

*Error to Ouray County Court.* HON. JOHN P. DOUGHERTY, Judge.

Mr. CARL J. SIGFRID, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, and FRANK C. WEST, Assistant Attorney General, for The People.

Mr. JUSTICE SCOTT delivered the opinion of the court.

The plaintiff in error was convicted in the County Court of Ouray county, upon an information charging as follows: "Lester C. Stadler, late of the county of Ouray, State of Colorado, on or about the 19th day of July, in the year of our Lord one thousand nine hundred and twelve, at and within the county aforesaid, did unlawfully sell to one Ralph M. Williams a certain compound, mixture and product of which the salts of cocaine was constituent and ingredient."

The assignments of error, sought to be considered in

the determination of this case are: 1. That if there was any offense committed, it was solely at the instigation and inducement of the sheriff of the county, and for such reason there can be no conviction; 2. That the evidence is insufficient to sustain a conviction.

It appears that the plaintiff in error was at the time of trial, a physician of some thirty years' practice, eighteen of which had been in the city of Ouray, in the said county.

The testimony of the people is to the effect that R. A. McKnight, sheriff of Ouray county, procured one Ralph Williams, who admits that he is given to the use of cocaine and liquor, to go to the office of the defendant and purchase cocaine. For this purpose the sheriff gave Williams a dollar with which to make the purchase. The sheriff then procured one Humphries, who was the town marshal of Ouray, to be present when Williams should go to the physician's office, with instructions that upon his return to the street, he was to receive from Williams the cocaine so intended to be purchased. Williams went to the physician's office, which was in the upper story of the building occupied by him, and upon returning and after reaching the street, Humphries met him and took the powder from his pocket, which it is claimed, contained cocaine.

The sheriff, Williams and Humphries, all understood before the occurrence, the part that each was to play in the transaction. Williams says that he went to the doctor's office and said to him, "What is the chance to get a dollar's worth of cocaine?" To this he says the doctor replied, "I guess it will be all right," and then went into another room and pocured the powder, for which Williams paid him the dollar, given him by the sheriff, and went out.

Upon cross examination, Williams three times contradicts his testimony in this respect, and says that he did not mention cocaine, but asked for "some stuff;" that he did not give any name at all; again, that he "wanted some of that stuff for his lady friends." He further says that he

went to the doctor's office for the sole purpose of having him arrested, and that he had no intention of using the cocaine, but intended simply to get it as evidence upon which to convict the defendant.

. The testimony shows that the defendant does not keep drugs of any character for sale, but that he carries medicines which he uses solely in his practice.

The defendant testifies as to the circumstances under which Williams procured the powder upon which the complaint is based, as follows:

"He came in on the evening of July 19th, he smelled of liquor and was shaky. I noticed unsteadiness in his gait, and had difficulty in understanding him. He said he would like some medicine, and I asked him "for what? To brace you up and quiet you?" And he said "Yes." I gave him a powder. It contained 5 grains of chloretone, about 3 grains of acentanilid, and a grain of caffeine, and a 60th of a grain of digitaline. Chloretone does not contain any cocaine."

He says, further, that he charged Williams one dollar for the prescription and medicine.

We do not find it necessary to determine the first assignment of error for the reason that it is quite clear that the evidence is not sufficient to sustain a conviction under the information.

That Williams was in the apparent distressing physical condition at the time, as testified by the defendant, is not disputed, nor is it denied that the doctor gave him but one powder for a single dose, or that the powder did not contain each and all of the ingredients as testified by the defendant.

The only testimony upon the part of the people tending to show that the powder contained cocaine was that of two physicians, Sickenberger and Crosby, both admittedly unfriendly to the defendant, each of whom testified that he tested the powder by tasting the contents only, and upon such test pronounced that it contained cocaine.

Upon cross examination each of these witnesses was presented a medical work and his attention called to the following statement therein by the author:

"Cocaine responds to all the general tests for alkaloids, giving precipitates for tannic acid, picric acid, solutions of iodine, etc., but these are not distinctive, nor, unfortunately, do we possess at the present time any one characteristic test for this alkaloid."

**Dr.** Sickenberger upon that matter testified as follows:

Q. "Do you agree that Dr. Haines is right about that statement or not? A. I am not able to judge about that. I am not qualified to judge whether Dr. Haines is right or wrong."

Dr. Crosby testified concerning the statement from the medical work as follows:

Q. "Do you agree or disagree with this statement? A. I would not disagree if you confine that to the chemical test.

Q. But your claim is that while they have no absolutely certain chemical test by way of reaction on this alkaloid cocaine that there is the tasting test which you can absolutely determine it by? A. I do not claim that they have no chemical test by which they can determine cocaine, but I am not familiar with it."

There is no contention that the medical work referred to is not standard authority on the subject, and it will be seen that neither of the witnesses disputes the correctness of the statement of fact therein made. Yet the only test upon which these witnesses based their conclusion that the powder contained cocaine, was by that of taste.

The testimony of these witnesses can be no stronger than the expression of an opinion based on taste alone. Neither do we gather that there was other intention on the part of either. That the powder contained cocaine must be proven as any other material fact beyond a reasonable doubt, before conviction can be had in this case. Plainly

the witnesses were not qualified by the alleged test made, to so testify.

That cocaine was sought to be purchased or intended to be sold rests wholly upon the testimony of Williams. This testimony cannot be read without a strong conviction that the witness is given to the use of dope and liquor, and is unreliable and untruthful. Indeed, it appears that the sheriff himself did not trust him, for he had an officer meet him as he came down the stairway from the doctor's office, and who there took the powder from him. As further illustrating the unreliability of the testimony of the witness, he makes the following contradictory statements in his direct examination:

"On July 19th, in the evening, I went to Dr. Stadler's office. I sat down for a while and said, 'What is the chance to get a dollar's worth of cocaine?' He said, 'I guess it will be all right, take a chair.' I took a chair and pretty soon after he had weighed it out, I took the package and went down stairs."

Again, he says:

"I saw Mr. Humphries at the time I went up and knew he was there to search me when I came down. I did not stay in Dr. Stadler's office over ten minutes. I did not sit down; stood up at the table all the time looking through a magazine. The doctor went into another room to get the medicine."

To permit conviction upon a criminal charge, solely upon the testimony of such a witness would be to sanction a mockery of justice.

We are clearly of the opinion that the testimony in this case is palpably insufficient upon which to sustain the verdict.

*The judgment is reversed.*

*En banc.*

GARRIGUES, J., dissents.