## MYRES v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1919. Rehearing Denied June 25, 1919.)

### No. 3189.

1. HOMICIDE ⬅300(1)—INSTRUCTIONS—SELF-DEFENSE—EVIDENCE.

The killing being when deceased was standing inoffensive and unarmed, in peaceful conversation with third person, submission in instruction of issue of self-defense, even under rule of apparent danger, is not required, on evidence merely that deceased, who had a bad reputation for peace and quietness, had recently threatened defendant's life, and had his hand in his pocket, where it remained till he was shot.

2. HOMICIDE ⬅253(1)—MURDER IN FIRST DEGREE—MALICE AFORETHOUGHT—EVIDENCE.

Evidence in homicide case *held* to warrant finding of capacity to form, and of forming, deliberate and malicious intent to kill, necessary for murder in first degree.

3. HOMICIDE ⬅22(1), 28—RESPONSIBILITY—INTOXICATION—MENTAL CONDITION.

Abnormal mental and nervous condition, during recovery from spree, of one committing homicide, does not serve to excuse or lower the degree of his offense, provided he was capable of knowing right from wrong, and had will power to do right and abstain from wrong, and capacity to form the deliberate and malicious intent necessary for first degree murder.

4. COURTS ⬅337—FEDERAL COURTS—FOLLOWING STATE PRACTICE—CRIMINAL PROCEDURE.

The federal courts in criminal procedure do not follow the practice of the courts of the states in which they sit.

5. COURTS ⬅337—PROCEDURE OF STATE COURTS—DOCUMENTARY EVIDENCE—AUTHENTICATION.

Provision of Rev. St. § 906 (Comp. St. § 1520), authorizing use in federal courts of authenticated documents from state courts and offices, that they shall have such faith and credit given them as they have by law or custom in the courts or offices of the state, is not an adoption of the rules of practice, under the state's law, as to the preliminaries necessary for their introduction, as length of time of filing before trial and notice to adverse party.

6. CRIMINAL LAW ⬅1213—CRUEL AND UNUSUAL PUNISHMENT—GRIEVANCE WITH VERDICT.

Grievance, on which is bottomed complaint that infliction of sentence of life imprisonment for a murder committed while defendant was in an abnormal mental condition is a cruel and unusual punishment, in violation of the Constitution, is not with the sentence, but with the verdict of first degree murder.

7. INDICTMENT AND INFORMATION ⬅110(17)—MURDER—FELONIOUSLY.

Indictment for murder need not use the word "feloniously"; it not being used in Pen. Code, §§ 273, 274 (Comp. St. §§ 10446, 10447), creating the offense, and defining murder, its two degrees, and manslaughter.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Frank Myres was convicted of murder in the first degree, and brings error. Affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John T. Hill, of El Paso, Tex., for plaintiff in error.

R. E. Crawford and W. H. Fryer, Asst. U. S. Attys., both of El Paso, Tex.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiff in error was convicted in the District Court of the crime of murder in the first degree, and sentenced to imprisonment for life, the verdict of the jury excluding capital punishment. The judgment of conviction is assailed upon six grounds, which will be passed upon in order.

[1] 1. The plaintiff in error complains that the issue of self-defense was not submitted to the jury in the general charge of the court, and because the court refused to defendant an instruction presenting that issue. The record shows that the issue was not presented in either way to the jury. The question is whether there was evidence to support it. It is conceded that the undisputed facts show that the defendant was in no real danger of life or great bodily harm from deceased when he killed him. The contention is that there was evidence of apparent danger from defendant's viewpoint, which required a submission of the issue of self-defense to the jury; i. e., that the defendant had reasonable grounds for believing that the deceased was about to draw a pistol from his pocket and shoot him.

There is evidence that the deceased had, shortly before he was killed, and on the same day, threatened to kill the defendant before sundown. Both were noncommissioned officers in the same company, stationed at Ft. Bliss, Tex. The defendant had been on a spree during the Christmas holidays, from which he was recovering on the day of the killing. He had had a dispute on the morning of that day with deceased, who refused to permit him to have a saw sharpened, and it was after this that the alleged threats were made by the deceased. The killing occurred about 12:30 p. m. in the company street. About noon the defendant went to the deceased's tent and inquired for him. Not finding him there, he returned to his own tent, loaded his pistol, and went out of his tent, into the company street. The deceased had been to the company commander's house, and was returning along the company street. He passed another sergeant, named Hixon, in the company street, and, after passing him, turned and accosted him, and began a conversation with him, while both were standing in the company street. The defendant, after leaving deceased's tent, discovered deceased in the street, talking with Hixon, and, approaching him, shot him first in the right arm, and then three times in the body; the deceased sinking to the ground after the first or second shot. The defendant, after the fourth shot, threw his pistol on the ground, and then picked it up and pointed it at deceased, but it failed to go off. After the deceased was shot he only said: "You've got me." The defendant said nothing before or immediately after the shooting.

The deceased was unarmed; his pistol being in his tent at the time he was killed. During the conversation with Hixon he stood with his right hand in his pocket, but, according to the undisputed evidence,

made no effort to withdraw it, and did nothing that could be construed as a hostile demonstration of any kind, and was unaware of the presence of the defendant until the first shot was fired by defendant. The defendant did not testify in his own behalf, and there is no dispute about the immediate facts of the occurrence, and they are as stated. The deceased had a bad reputation for peace and quietness. Unless we are prepared to say that a man who has recently threatened another's life can be justifiably killed by that other when he is standing unarmed and inoffensive, engaged in peaceful conversation with a third person, merely because his hand is in his pocket, where it remains till he is shot, we cannot say that there was any evidence to support the issue of self-defense in this case, for this is what the undisputed evidence in the record discloses. The District Judge rightly refused to submit that issue to the jury.

[2, 3] 2, 3. The plaintiff in error contends that a verdict of murder with malice aforethought was improper, in view of defendant's mental condition at the time of the killing, due to previous intoxication, and that the defendant should either have been acquitted by reason of insanity, or convicted of a lower degree of crime. The District Judge charged on the various degrees of murder and upon manslaughter; also upon the effect of insanity and drunkenness upon the degree of crime as affecting the specific intent required to be proven. No complaint is made of the charge in any of these respects. The complaint is with the finding of the jury upon the facts, under the court's unchallenged charge. That there was evidence justifying the jury in determining that the defendant was not excused by insanity for the killing is clear. The defendant was doubtless in an abnormal mental condition, due to the spree he was just recovering from, and, as a result, he magnified trifles, permitted them to prey upon his mind, with the result of resenting them in a way he would not have done, if free from the influence of liquor.

The evidence would have justified the jury, however, in finding that he was not drunk on the day of the killing. It was conceded that he had charge of the company camp on that day, though the evidence tends to show he performed his duties indifferently. There is evidence that he acted abnormally, and also evidence that he was able to act and perform his duties without causing comment. The jury had evidence before them that would have justified them in finding that there was nothing different in his condition from that of any man whose nerves were affected by recent intoxication, and whose predisposition was to nurse grievances and resent trifles. The law neither excuses nor mitigates crime because of such a condition, self-imposed by the defendant. The evidence shows that the defendant, at least half an hour before he killed the deceased, sought deceased in his tent, and, not finding him there, returned to his own tent, loaded his pistol, continued his quest, and immediately upon discovering him, and without accosting him, commenced to shoot at him, and continued till he was mortally wounded. The jury might well have deduced from this the capacity of the defendant to form the deliberate and malicious intent to kill, necessary to constitute murder in the first degree.

After the occurrence the defendant was in a nervous state, due to the excitement and his weakened condition. While his condition, when he committed the offense, and his previous good character, when not intoxicated, might form the basis of an appeal for executive clemency, they do not serve to excuse or lower the degree of his offense in the eye of the law, provided they left him with the capacity to know right from wrong and the will power to do right and abstain from the wrong, and the capacity to form the deliberate and malicious intent necessary to the crime of murder in the first degree. The jury have found against him on these issues upon evidence sufficient to justify them in so doing, and there is no redress available to him in the courts.

[4, 5] 4. The plaintiff in error complains of the admission of certified copies of the deeds of the owners of the lands constituting the government reservation at Ft. Bliss, and the deed of the Governor of Texas, ceding jurisdiction over it to the United States, upon the ground that, under the Texas Civil Code, such certified copies are admissible, in civil or criminal proceedings, only when filed three days before the trial, and when notice of the filing is given the adverse party. The United States courts, in criminal procedure, do not follow the practice of the state courts of the states in which they sit. Section 906, Revised Statutes of the United States (Comp. St. § 1520), authorizes the use in the federal courts of authenticated documents from state courts and offices. It provides that such certified records "shall have such faith and credit given to them in every court and office within the United States as they have by law or usage in the courts or offices of the state, territory, or country, as aforesaid, from which they are taken." The effect of this provision is not an adoption of the rules of practice as to the preliminaries necessary to the introduction of certified records fixed by state statutes, but to give to such certified copies, when introduced, the like faith and credit that they are accorded in the courts of the state.

[6] 5. The plaintiff in error complains that the infliction of a sentence of life imprisonment in the penitentiary for a murder committed while the defendant was in an abnormal mental condition is a cruel and unusual punishment, and contrary to the federal Constitution. It will not be contended that life imprisonment is too severe a punishment for murder in the first degree, or that it is an unusual one for that crime. The defendant was adjudged guilty of that crime, after a jury had found him guilty. The complaint, if there is any, is therefore with the verdict and judgment of conviction, and not with the sentence. An innocent man, legally convicted, would be in the same attitude. Any punishment of an innocent man would be cruel and unusual; but his grievance would be against the verdict, and not against the sentence.

[7] 6. The plaintiff in error lastly criticizes the indictment because it does not charge that the offense was feloniously committed. The crime of murder under the federal law is defined by statute to be "the unlawful killing of a human being with malice aforethought." In defining murder in the first and second degree, and also manslaughter, the Penal Codes does not make use of the word "feloniously." The

offense being created and defined by statute, and the statute not using the word "feloniously" in defining the crime, the indictment need not charge that it was done feloniously. Penal Code (Act March 4, 1909, c. 321) §§ 273, 274, 35 Stat. 1143 (Comp. St. §§ 10446, 10447); Bannon and Mulkey v. United States, 156 U. S. 464, 467, 15 Sup. Ct. 467, 39 L. Ed. 494; United States v. Staats, 8 How. 41, 12 L. Ed. 979.

We find no error in the record, and the judgment is affirmed.