## HURWITZ v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1924. Rehearing Denied July 21, 1924.)

### No. 6460.

1. **Indictment and information ⬅111(1)—Not necessary to negative exceptions in indictment for violation of Narcotic Act.**

   In an indictment for illegal sale of narcotic drugs, in violation of Harrison Narcotic Act, § 2 (Comp. St. § 6287h), it is not necessary to negative the exceptions enumerated in said section.

2. **Criminal law ⬅762(2)—In commenting on facts in instructions, court must be judicial and fair to both sides.**

   A court may comment on the facts in instructions, but only in a judicial way and with fairness to both, and comment in terms which approach or enter the field of an advocate is erroneous.

3. **Criminal law ⬅785(3)—Instruction as to credibility of witness held erroneous.**

   An instruction that the jury "must know" that a witness is unworthy of belief before rejecting his testimony is erroneous.

4. **Witnesses ⬅48(1)—Witness not disqualified because of previous conviction of felony.**

   In the federal courts a witness is not disqualified because of previous conviction of a felony.

5. **Criminal law ⬅395—Searches and seizures ⬅3—Taking property of another from automobile of defendant, without warrant, held not unlawful seizure, nor ground for excluding articles as evidence.**

   Taking from the automobile of defendant, without a search warrant, bottles containing narcotic drugs, which had been sold to, and were the property of, another, *held* not an unlawful seizure, nor ground for excluding the bottles and contents from admission in evidence against defendant.

6. **Criminal law ⬅371(1)—In prosecution for unlawful sale of narcotics, admission of evidence of other sales held error.**

   In a prosecution for specific unlawful sales of narcotic drugs, under Harrison Narcotic Act, § 2 (Comp. St. § 6287h), admission of evidence of other sales by defendant *held* error.

   Stone, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Criminal prosecution by the United States against Leon Hurwitz on three indictments. Judgment of conviction, and defendant brings error. Reversed and remanded in part, and affirmed in part.

·R. H. Davis, of Joplin, Mo. (Owen & Davis, of Joplin,. Mo., on the brief), for plaintiff in error.

S. M. Carmean, Sp. Asst. U. S. Atty., of Kansas City, Mo. (Charles C. Madison, U. S. Atty., of Kansas City, Mo., and C. S. Walden, Sp. Asst. U. S. Atty., of Joplin, Mo., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. [1] Dr. Leon Hurwitz was found guilty and sentenced on three indictments, consolidated for trial, each charging him with violation of the act of December 17, 1914, 38 Stat. 785, Comp. Stat. 1916, § 6287h. The crimes charged are defined by the first sentence of section 2 of the act. The first numbered indictment charged a sale of morphine and cocaine on a certain day to Lulu Armstead, not in pursuance of a written order of her on a form issued in blank for that purpose by the Commissioner of Internal Revenue. The other two are in like form for sales of morphine, one sale being to Elenor Zedeker and the other to Sam Bowden. The date of each sale is given and all of them are charged to have been made in Joplin, Mo. Each clearly informed the defendant what he had to meet at the trial. It was not necessary that the exemptions from criminal liability extended by the second section of the act be negatived, and the failure of the pleader to do so did not render them bad. It may be conceded that each indictment contained allegations that need not have been made, but that was surplusage. The demurrers were properly overruled. Manning v. United States (C. C. A.) 275 Fed. 29; Wallace v. United States, 243 Fed. 300, 304, 156 C. C. A. 80; Myres v. United States, 256 Fed. 779, 785, 168 C. C. A. 125; Oakshette v. United States, 260 Fed. 830, 171 C. C. A. 556; Rothman v. United States (C. C. A.) 270 Fed. 31.

[2, 3] At the times of all of the sales charged the defendant was registered under the act and could lawfully dispense the drugs in the course of his professional practice only. It will be convenient to dispose of the alleged sales to Zedeker and Bowden first. Elenor Zedeker was an addict, of bad moral repute and in the city jail in July, 1920. A narcotic agent and police officers talked with her while she was in jail and arranged with her to go and buy the drug if they would let her out. The narcotic agent gave her two marked dollars. She was permitted to go. They followed her. She first went to a negro cabin but was not able to buy it there. She then went to the doctor's office. They followed her, and when she came downstairs from his office onto the street she delivered to them a small quantity of morphine. The narcotic agent and the police officers, or some of them, then went into the doctor's office and recovered from him the two marked dollars which had been given to the woman. As against the case thus made the doctor testified that he knew the woman was an addict, that she came into his office and told him that she had been in jail for four days and had not had a dose of medicine, that she was in a very nervous condition, that she gave him the two dollars, for which he was preparing to administer the drug hypodermically, that he poured it on a piece of paper on the desk, took his syringe and started across the room for water to be used in the syringe in administering the drug, and as he

turned around he observed that she had gone and taken the morphine with her. The whole case thus rested on the testimony of the woman and the doctor, as to whether the sale was in violation of the act or whether, on the doctor's part, it was intended to be administered in the course of his professional practice only. The court clearly stated that issue to the jury. Then, after calling their attention to the claim that she was a woman of bad character and had been convicted of burglary and larceny the court proceeded:

"It is for you gentlemen to say whether the facts presented to you in relation to the Zedeker woman would successfully impeach her so that you should disregard her testimony. Before you consider that she is successfully impeached you should take into consideration all of the testimony because you must know that one is unworthy of belief before disregarding his testimony. Ordinarily one guilty of untruths and guilty of offenses which would shake your confidence in his truth and veracity might not be believed, yet the worst offender may tell the truth, and it is for you gentlemen to determine whether or not the Zedeker woman is telling the truth, and, in determining whether or not you should reject her testimony as wholly unworthy of belief you will take into consideration the question whether or not she was corroborated. For instance, she says the officers gave her a one-dollar bill and a silver dollar, she says it and they say it, and both the silver and the paper money had been marked for identification. Now, according to the testimony and the admitted facts, this money was found on Dr. Hurwitz's person, in his pocket, at the time the officers went there and arrested him. You may take that as a corroborative circumstance. You may go further and take into consideration the statement of the doctor when apprehended that all he had done was to sell a dope-fiend some 'dope.' You may consider the fact that she had the morphine; that she came downstairs with it and having that quantity that the doctor from whom it was taken made no statement concerning that fact at that time and you may take into consideration the fact that the doctor had an opportunity to state that she had taken it that way when his back was turned when he was preparing to treat her. Taking into consideration all of these facts you are to determine whether you will accept or reject her testimony or whether you will take the testimony of Dr. Hurwitz and accept what he says about it."

This instruction impresses us as erroneous, misleading and prejudicial; because the circumstances called to the attention of the jury were not corroborative of the one issue before them, that is, Did the woman take the drug and leave the office without the doctor's permission while he was preparing to administer it? That was the only disputed fact, and the jury was thus misled from the one issue; and because the instruction impresses us as argumentative. Starr v. United States, 153 U. S. 614, 624, et seq., 14 Sup. Ct. 919, 38 L. Ed. 841. The court was, of course, at liberty to comment on the facts, but only in a judicial way with fairness to each side, but this, we think, went beyond that and approached, if it did not enter, the field of an advocate. Furthermore, there was error in advising the jury that they "must know" that Elenor Zedeker was unworthy of belief before they could disregard her testimony about taking the drug away. If they had a reasonable doubt as to that, the defendant was entitled to the benefit of that doubt based on their estimate of her veracity.

The same error appears to us to have been made by the court as to the sale to Bowden. Bowden testified that he went to the doctor's office in July, 1922, and bought a small quantity of morphine. He said he got it for a sick woman. The doctor testified that Bowden

came to his office at that time, told him that his wife was sick, that he had a small quantity of morphine and wanted to sell the morphine to the doctor to get money on account of his wife's sickness, that Bowden laid the paper containing it on the table and unwrapped it, that he told Bowden he could not buy it and that in rewrapping it he tore the paper in which it was wrapped, whereupon the doctor tore part of a leaf from a magazine lying by and Bowden rewrapped it in that and went away with it. Thereupon the court instructed the jury:

"You will take into consideration the character of Bowden and that he has been convicted. That is a question for you to decide. But, before you will disregard his testimony and not receive it, and before you can say he has been successfully impeached because of his record you will take into consideration all of the surroundings and circumstances. You are to determine whether you believe Bowden's testimony or Dr. Hurwitz's testimony; you have to consider it all. Bowden says he went there to purchase and did purchase it and it is for you gentlemen to consider whether a man of his standing and in his condition would be going about seeking to dispose of a quantity of morphine to a doctor, taking into consideration the man and the quantity of morphine which he had at that time in his possession. The court is constrained to tell you that if Bowden brought that there he went there as a law-breaker; and by so doing and attempting to make a sale of it he violated the law, whereas Dr. Hurwitz says he was courteous and allowed him to exhibit it. The court wishes to say that he was under no obligation under such circumstances to show him courtesy. He had gone there according to the doctor's statement as a law violator, it was not in the original package and he was seeking as a peddler to sell narcotics and the very possession of the narcotic by Bowden was a violation of the law. You will take into consideration all of the facts that were given you. This is a corroborative fact which Dr. Hurwitz explained,—he says Bowden unrolled it and he allowed him as a matter of courtesy to exhibit it to him and that in rolling it up again Bowden tore the paper in which it had been wrapped and then that the defendant furnished him a leaf out of a book on his desk or in his office, a leaf from a book, and wrapped it up in that. You may take into consideration in that matter whether or not Dr. Hurwitz, as a physician, and permitted to be a purchaser of narcotics under an order blank and using it in his practice as he did, whether or not under the circumstances that he would lend himself to aid such a law violator by furnishing him in that way with a piece of paper and whether or not he would allow himself, under such circumstances, to help wrap it up and allow him to go away in that manner. These are circumstances that will aid you in determining these matters and will be for your consideration when you go to your jury room."

We cannot but regard this as in the nature of an argument to the jury why they should accept Bowden's testimony and not accept the testimony of Dr. Hurwitz as to what occurred on the occasion. It is obvious that the final issue for the jury's determination in both the Zedeker and Bowden cases turned on whether the jury would believe Bowden and Elenor Zedeker or the doctor, and in both it is more than probable that the comments of the court induced verdicts of guilty. The comments thus appear to us to have been prejudicial to the defendant.

In the other case the narcotic agent furnished Lulu Armstead with $50 with which to buy a bottle of cocaine and a bottle of morphine from the defendant, and induced her to request him over the telephone to bring it to her home at nine o'clock in the forenoon the following day. About that hour the agent and police officers secreted themselves in a nearby house. The doctor arrived in his automobile

at the appointed hour. He went into the house. Lulu Armstead, her husband and another woman who was present testified that she gave the doctor the $50. The bills were marked. He put the money in his pocket, and they testified he said the drugs were in his car and he would go out and get them. As he left the house he was immediately arrested by those who were in hiding. The $50 was found on his person. They discovered that Lulu Armstead did not have the drugs. They then went to the doctor's automobile and found in it a bottle of morphine and a bottle of cocaine. The doctor testified that the money was paid to him on an account owed by Lulu Armstead for the drug treatment which he had administered to her several months before that. She denied that he had treated her but admitted that she was an addict.

[4] One of the errors assigned is that the court permitted witnesses to testify who had been convicted of felonies. It is sufficient to say that the common-law rule in that respect does not obtain in federal courts since the decision in Rosen v. U. S., 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. 406.

[5] It is also assigned as error that the two bottles were found in the car without a search warrant having been sued out, and that their seizure was unlawful, and that the bottles with their contents, which were offered in evidence, and all testimony pertaining thereto, should have been excluded. We consider the objection without merit. There was sufficient evidence to sustain the conclusion that the bottles of morphine and cocaine had been purchased by Lulu Armstead and were her property, that is, there was a completed sale and not an executory contract for a sale; and the jury so found in rendering a verdict of guilty. Hatch v. Oil Co., 100 U. S. 124, 25 L. Ed. 554; Leonard v. Davis, 1 Black, 476, 483, 17 L. Ed. 222; Hammer v. United States, 249 Fed. 336, 161 C. C. A. 344; Railway Co. v. Railway Co., 209 Fed. 758, 760, 126 C. C. A. 482. We cannot see how the rights of the defendant were invaded by taking from his car these two bottles of drugs that had been sold to Lulu Armstead.

[6] It is also assigned as error that the court permitted over objection one or two witnesses to testify to purchases of the drug by them from the defendant other than those charged in the indictments. Each indictment charged a particular sale. The defendant's intent in making the sales, if he made them, was not an element of either offense. If he made them, as charged, he would be guilty of the offenses charged regardless of his intent. Where intent is an element of the offense charged it is competent, for the purpose of establishing that fact, to show other acts on the part of the defendant of like character at about the same time. But we know of no rule that permits that kind of proof here, and it was error to admit it in this case. However, the facts in the case charging a sale to Lulu Armstead seem to have been established beyond possibility of doubt, which convinces that the testimony objected to could not have been prejudicial; and under the Act of February 26, 1919, Comp. St. 1919 Supp. § 1246, we think it our duty to disregard the assignment of this error.

The judgment and sentence in Case No. 385, charging sale to Lulu Armstead, is affirmed, and those in Cases Nos. 426 and 463, charging sales to Elenor Zedeker and Sam Bowden, are reversed and remanded.

STONE, Circuit Judge. I concur in the reversal of the Zedeker Case on the ground that the court erred in charging that it was necessary for the jury to "know" that the Zedeker woman was unworthy of belief before they could reject her evidence.

I dissent from the reversal of the Bowden Case.