STATE, RESPONDENT, *v.* MAH SAM HING, APPELLANT.

(No. 6,742.)

(Submitted January 12, 1931. Decided February 2, 1931.)

[295 Pac. 1014.]

*Mr. James H. Baldwin, Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Appellant, submitted a brief; *Mr. Loble* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. S. R. Foot,* Assistant Attorney General, for the State, submitted a brief; the latter argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Mah Sam Hing, was convicted of the crime of having in his possession certain prohibited drugs, and was sentenced to serve five years in the state prison and to pay a fine of $3,000 or, in default thereof, serve said fine at the rate of one day for each $2. He moved for a new trial, which motion the court, by order, denied. Defendant has appealed from the judgment and order.

1. The information, as originally filed, charged that, on the fourteenth day of February, 1930, the defendant did feloniously "have in his possession and under his control a certain derivative, compound, manufacture and salt of coca leaves, known as alkaloid cocaine and cocaine," the exact amount of which being to the county attorney unknown.

The state having rested its case after a chemist had testified at length as to the nature of certain exhibits introduced in evidence and alleged to have been in the possession of the defendant just prior to his arrest, on the court's own motion the information was amended to conform to the proof, by striking out the words "alkaloid cocaine and" and by adding the word "hydrochloride" after the word "cocaine," to which action counsel for defendant duly objected and excepted.

Counsel contend that the amendment made states a charge different from that contained in the original information, affects the substantial rights of the defendant, and constitutes reversible error. They assert that the action was commenced under section 3200, Revised Codes 1921, which provides that "it shall

be unlawful for any person to have in his possession ＊ ＊ ＊ any of the drugs mentioned in this Act,'' etc., the reference being to ''drugs'' enumerated in section 3186, Id., which does not mention ''hydrochloride cocaine.'' This latter statement is erroneous. The reference originally was to the drugs mentioned in section 3189, as sections 3189 to 3202 were enacted as Chapter 202, Laws of 1921, the provisions of which enactment, in so far as they relate to opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, supersede those of the Act of 1911, of which section 3186 is a part. (*State* v. *Wong Fong*, 75 Mont. 81, 241 Pac. 1072, decided in 1925.) Notwithstanding this fact, called to the attention of the legislature by the decision, that body has since amended, not section 3189, but section 3186 (Chap. 91, Laws of 1927, and Chap. 5, Laws of 1929.) The latest expressions of these subsequent enactments, in turn, supersede the provisions of section 3189, in this regard. The reference found in section 3200 is therefore now to the drugs enumerated in Chapter 5, Laws of 1929. It is true that ''hydrochloride cocaine'' is not mentioned in the enactment, but, like section 3189, the prohibition therein contained extends to any ''derivative'' of the drugs mentioned, among which we find ''alkaloid cocaine.''

On the trial a competent chemist testified that hydrochloride cocaine is derived directly from alkaloid cocaine, and indirectly from coca leaves. The contention that the information does not charge the possession of a prohibited drug is therefore hypercritical and cannot be maintained. (*State* v. *Wong Fong*, above.)

The amendment made by direction of the court did not materially change the charge, and, as the defendant denied possession of any prohibited drug and defended on the ground of nonpossession, he was not misled, his substantial rights were not prejudiced by the amendment, and he is sufficiently protected from a future proceeding. (*Hoffman* v. *United States*, (C. C. A.) 20 Fed. (2d) 328.)

2. Defendant, however, contends that the state failed to prove ▮ that the bindles admitted in evidence contained hydrochloride cocaine, and, as the court instructed the jury that "unless you are satisfied from the evidence beyond a reasonable doubt that the substance * * * is cocaine hydrochloride and not cocaine in any other form, your verdict must be 'Not Guilty,' " which instruction became the law of the case, the verdict is against law.

On direct examination the chemist testified that he tested the substance in each of the bindles introduced in evidence with hydrochloric acid and platinum chloride, also with silver nitrate, and examined the result under a microscope, as a result of which he stated positively that each of the packages contained cocaine hydrochloride which "is commonly called simply cocaine." He later explained that the two were not the same, described the difference, and admitted that the two terms were not used interchangeably in medicine. He was subjected to a lengthy and grilling cross-examination of a highly technical nature, during which he was examined as to certain other tests than those he made, described in certain works on the subject, in which it was stated that, among others, the "physiological" test was most satisfactory. The witness admitted that he did not make this test, nor did he test the substances as to the melting point as to which there is a wide spread between cocaine and cocaine hydrochloride, but stated that the work referred to was written before the test he made was perfected and that the book he used was written in 1926; that he had made the test therein described perhaps a thousand times and it was a proper test. On redirect he was required to make the "physiological test" in court; this consisted in placing a small amount of the substance on the tongue and noting the reaction. From this test the witness testified that he could say the substance was cocaine, but could not designate it as cocaine hydrochloride, but further stated that "as far as their action is concerned they are exactly the same thing."

This latter testimony might affect the weight to be given to the testimony of the witness, but did not destroy the effect of his former testimony based upon what he declared to be the proper method of testing the substance. It was for the jury to determine the weight to be given to his testimony. The implied finding that the substance was hydrochloride cocaine is supported by substantial evidence and no witness was called to dispute the testimony of the only expert witness called by the state. The verdict cannot be disturbed on this ground.

3. The next question raised is as to the sufficiency of the evidence with respect to the commission of the crime alleged. It being asserted that the physical conditions shown to have existed, rendered the oral testimony of the two federal narcotic agents who made the arrest so improbable as to be unworthy of belief, and therefore, under the rule announced in *State* v. *Gunn,* 85 Mont. 553, 281, Pac. 757, and other decisions of this court, the trial court erred in not granting a new trial.

Briefly, the testimony resulting in the conviction is substantially as follows: At about 7:30 P. M. on February 14, 1930, Agents Williams and Welliver were watching No. 18 West Mercury Street, Butte, which is a few feet west of what is known as "China Alley," extending south from Mercury to Silver Street; they were standing on the opposite side of the street, a few feet east of directly opposite No. 18, and a few feet west of the mouth of the alley; there were lights on Mercury Street and in the alley. The witnesses testified that they saw a closed car driven by a white man draw up near No. 18, and defendant come out and get into the car, which immediately drove away but returned in about fifteen minutes when, instead of returning to No. 18, it turned into the alley. Witnesses immediately started to follow at "a jog trot." As the witnesses entered the alley, the car stopped in the center of the alley opposite a building, No. 209; it was not out of sight of the witnesses at any time as they started to follow from approximately opposite the mouth of the alley. Defendant got out of the car and started down the alley south and toward the west line of

the alley, but, having glanced over his shoulder and, presumably, seen the witnesses coming rapidly toward him, took some white object from his overcoat pocket and threw it over a low wall to the west of the alley and continued down the alley at a "dog trot." Defendant covered approximately sixty-five feet before the witnesses overtook him, and, as they called on him to stop, he again reached into his pocket and withdrew some white object which he threw away.

In a cursory search the witnesses were unable to find the last object thrown away, but took the defendant immediately to the point where he first threw something away and there went directly to a package which contained twenty-nine of the bindles of cocaine later produced in court, and $57. About a half hour later, having taken defendant to jail, the witnesses made a further search at the point of arrest and there found the thirtieth bindle. Although there was snow on the ground and it was somewhat sloppy the bindles were still dry when picked up.

To discredit this testimony, counsel for defendant had a survey of the neighborhood made and produced a map in court which shows that the alley runs at right angles to Mercury Street and that the door to No. 18 is twenty-four and a half feet west of the west side of the alley; that there are two or three porches on houses on the west side of the alley and other slight obstructions, and by mathematical demonstration showed that, if the witnesses were at the exact points they described at the times mentioned and proceeded in the manner described, keeping near the *west* side of the alley, and computing the time it would take a car to travel the distance claimed to have been traveled, or that was traveled, and the time it would take a man to cover the distance covered, going at three, four, or six miles an hour, the witnesses would not have been able to have seen what they claimed to have seen at the time and place they say they did see it.

However, the witnesses did not attempt to attain exactness as to place or distances, but merely spoke in approximate terms

from recollection, and on a careful study of the evidence both for the state and the defendant, and a careful examination of the map in evidence showing the relatively narrow porches and other obstructions, the testimony of these witnesses does not seem at all improbable or unbelievable. On rebuttal Welliver testified that he kept to the *east* side of the alley; he marked on the map the spot where he and Williams claimed defendant was when he threw the twenty-nine bindles away, and the spot where the witness was at the time, from which it clearly appears there was no obstruction to their view. Under the circumstances we cannot say that the testimony was so incredible as to be unbelievable; it was evidently believed by the jury and by the trial court on motion for a new trial and, on this ground, the judgment and order cannot be reversed.

4. Defendant asserts that the court's instructions Nos. 5a, 12 and 14 are confusing and tended to mislead the jury. We do not so view the instructions. Taken as a whole, they merely advise the jury that it is unlawful in this state for any person to have in his possession any derivative of coca leaves, if such possession was obtained contrary to law; that the amendment made at the direction of the court was made merely as a matter of procedure, and the jury must not infer therefrom that the court had any opinion or belief that, at the time alleged, defendant had in his possession cocaine hydrochloride; that, unless satisfied from the evidence beyond a reasonable doubt that the exhibits contained cocaine hydrochloride, they must find the defendant "not guilty," but, if convinced beyond a reasonable doubt that the defendant did have in his possession cocaine hydrochloride and "that the same was and is a derivative of coca leaves," they should find the defendant guilty. Under the foregoing authorities, the instructions state the law, except they may be more favorable to the defendant than he could require.

5. Defendant assigns error on the court's refusal to give the following instruction: "You are instructed that the mere opportunity to commit a crime, unless it excludes all reasonable

opportunity for its commission by another, standing alone, is not sufficient to justify a verdict of guilty."

The instruction might be proper in a case based solely upon circumstantial evidence and where the evidence discloses a "mere opportunity" in defendant to commit the crime charged, and further discloses that others had a like opportunity; but it is not applicable to the facts in this case. Here, the state relied upon direct testimony of the narcotic agents to the effect that they saw defendant in the possession of the bindles introduced in evidence and identified as containing the prohibited drug described. It is true that the defendant, after denying that he was in the automobile, testified that it passed him while he was under the porch of one of the houses on the west side of the alley, and that the driver of the car turned off his lights about the place where the bindles were found and then turned them on again, which, if believed by the jury, might have raised an inference that the driver might have thrown the bindles away; but, in the light of the testimony for the state, such testimony did not warrant the giving of the instruction offered.

"Instructions on circumstantial evidence are proper only where the state relies exclusively on that class of testimony; hence, where there is direct evidence of the *corpus delicti* such instructions are properly refused." *State* v. *Harris*, 66 Mont. 25, 213 Pac. 211; *State* v. *McConville*, 64 Mont. 302, 209 Pac. 987.)

Cases cited by counsel for defendant with reference to the propriety of giving instructions on "entrapment," where there is an inference in the evidence that defendant was, in fact, entrapped into sale or possession in this class of cases, are not in point here.

Finding no reversible error in the record, the judgment and order from which defendant has appealed are affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.