## CHIN GUM v. UNITED STATES.

No. 4072.

Circuit Court of Appeals, First Circuit.

May 18, 1945.

William F. A. Graham, of Boston, Mass., for appellant.

Gerald J. McCarthy, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the court below sentencing the appellant to a term of imprisonment after a jury had found him guilty as charged in an indictment alleging a violation of 26 U.S.C.A. Int.Rev.Code, § 2554(a) in that, on or about October 24, 1943, in Boston, he "did unlawfully, wilfully and knowingly sell, dispense and distribute to Raymond J. Oliviera a compound, manufacture, salt, derivative, and preparation of opium, to wit, eight (8) ounces of opium prepared for smoking, said opium having been sold by the said Chin Gum to the said Raymond J. Oliviera not in pursuance of a written order of the said Raymond J. Oliviera on a form issued for that purpose by the Secretary of the Treasury or his authorized agents."

The evidence is that Oliviera, a United States Treasury agent attached to the Bureau of Narcotics, acting through an informer named Manetta as an intermediary, met the appellant in front of No. 83 Harrison Avenue in the so called Chinatown District of Boston about 1:30 in the morning of the day alleged in the indictment. At this meeting Manetta posed as a peddler of narcotics and Oliviera posed as his customer.[1] On the stand Manetta described what then occurred as follows:

"I told him [meaning Chin Gum] first that my customer did not have the money, all of the money, and he would have to trust him for $40,—Agent Oliviera only had $460—so that Chin Gum said it was O.K., he would trust him. So that he said, 'Give me the money,' and Ray Oliviera handed him the money, and he said, 'Follow me to my store, 32A Oxford Street; it is around the corner,' So that we followed him about twenty feet behind him, and he went down in the basement, and we stayed outside, right in front of the door, and about three minutes later he came out and he said not to worry, it was O.K. and his boy would be right out. About three minutes later another Chinese fellow came out and Chin Gum said something to him in Chinese, and he took out a package wrapped up in a newspaper and handed it to Oliviera."[2]

Following this transaction Oliviera and Manetta left Chin Gum and walked back to the hotel where the former was staying. On the way Manetta asked to see what the package contained and Oliviera opened it and showed Manetta its contents, a can. In his hotel room that night Oliviera wrote his initials and the date on the can and later on that day he took it with him to New York, locked in his brief case. On November 2, 1943, in New York, Oliviera in the presence of a fellow agent weighed the can, sealed it in an envelope, and sent it by registered mail to the United States Chemist in Boston.

On the stand the chemist testified that on November 3, 1943, he received a can by registered mail from Oliviera; that he analyzed the contents of that can qualitatively, and that he found its contents to be 8 ounces and 20 grains of "smoking opium."

■ Counsel for the appellant admits in his brief that the evidence is sufficient to warrant a finding "that there was a sale of something by Chin Gum to Oliviera." But he says that the evidence is not sufficient to warrant a finding that beyond a reasonable doubt that something was "opium prepared for smoking," or that if it was, that the sale was not made in pursuance of a written order on a form issued for that purpose by the Secretary of the Treasury. We find no merit in either of these contentions.

■ From the testimony summarized above it is clear that a jury could reasonably find that beyond a reasonable doubt Oliviera purchased an approximately half-pound can of "smoking opium" from Chin

---

[1] Manetta testified that for years he had dealt illegally in narcotics and had frequently had such dealings with the appellant.

[2] Oliviera gave a substantially similar account of this meeting.

Gum. The appellant's suggestion that there is no evidence that "opium prepared for smoking" as alleged in the indictment, and "smoking opium" as testified to by the chemist, are one and the same thing, is too trifling to pause to refute. But the appellant argues that since no *quantitative* but only a *qualitative* anaylsis of the contents of the can was made, there is no evidence that the preparation sold contained more than two grains of opium per ounce and thus that evidence is lacking to show that what was sold was not a commodity exempted from the provisions of 26 U.S.C.A. Int.Rev.Code, § 2554(a) by § 2551 of the same title. We find a complete answer to this contention in the wording of § 2551. By it only "preparations and remedies" "Provided, That such remedies and preparations are * * * sold * * * as medicines" which do not contain more than two grains of opium per ounce are exempted from the provisions of the subchapter of the Internal Revenue Code in which § 2554 is found, and we have no hesitation in taking judicial notice of the fact that "smoking opium" or "opium prepared for smoking" is neither a remedy nor a preparation sold as a medicine. Ng Sing v. United States, 9 Cir., 8 F.2d 919, 921, 922.

■ The appellant's contention that the Government's case is fatally defective because it introduced no evidence that the sale by Chin Gum to Oliviera was not in pursuance of a written order on a form issued by the Secretary of the Treasury may also be briefly disposed of.

It has repeatedly been held that in prosecutions under § 2554(a) it is not incumbent upon the government either to allege (Manning v. United States, 8 Cir., 275 F. 29; Hurwitz v. United States, 8 Cir., 299 F. 449, 450, certiorari denied 266 U.S. 613, 45 S.Ct. 95, 69 L.Ed. 468; Nigro v. United States, 117 F.2d 624, 629, and cases cited) or to prove (Martinez v. United States, 5 Cir., 25 F.2d 302, 303; Sauvain v. United States, 8 Cir., 31 F.2d 732, 733) that a purchaser of opium did so without a written order on the form prescribed.

Two other matters remain for consideration.

At the trial the can already mentioned was identified by Oliviera when he was on the stand and it was then marked for identification. Later in the course of the trial Manetta identified the can as the one shown to him by Oliviera during their walk to Oliviera's hotel early in the morning of October 24, and still later the chemist identified it as the one he had received by registered mail from Oliviera, and the one from which he had taken the substance which he found upon analysis to be "smoking opium." It was then offered and admitted as an exhibit over the defendant's objection on the ground that it had not been "connected up properly, or tied up."

■ From the facts stated it is obvious that there was evidence that the can offered and admitted as an exhibit was the one received by Oliviera from Chin Gum and the one which the chemist found to contain "smoking opium." The fact that there is no positive evidence as to the whereabouts of the can from the time the chemist analyzed its contents to the time of trial is of no consequence. In the absence of suspicious circumstances it is enough that there is evidence that the can produced by the government at the trial came into the government's possession before trial. Now the appellant advances several new reasons why the can should have been excluded. He says that there is no evidence that it contained smoking opium when introduced; and that its introduction was both unnecessary and prejudicial. We see no reason to consider the grounds for exclusion advanced for the first time on this appeal. It will suffice to say that even if we should consider them, we would find them wholly lacking in merit.

■ Finally the appellant contends that his conviction cannot stand because he never was given an opportunity to examine the contents of the can or to have its contents analyzed. He admits that he never asked the government to be allowed to do so, and his defense was not that the can did not contain opium but was that he never had had anything to do with it, being in New York on October 24, 1943. So his contention comes down to this—that he cannot stand convicted because the government did not of its own volition disclose its evidence to him. To state this contention is to refute it. We are not aware of any case, and none has been cited to us, so much as suggesting that the government cannot obtain a conviction unless before trial it has voluntarily offered the accused a full opportunity to examine all the evidence to be introduced against him.

The judgment of the District Court is affirmed.