## WILLIAMS v. UNITED STATES.
### No. 1280.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 5, 1953.

Decided Feb. 5, 1953.

De Long Harris, Washington, D. C., with whom Curtis P. Mitchell, Washington, D. C., was on the brief, for appellant.

Kitty Blair Frank, Asst. U. S. Atty., Washington, D. C., with whom Charles M.

Irelan, U. S. Atty. and William R. Glendon, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Joseph M. Howard and William E. Kirk, Jr., Asst. U. S. Attys., Washington, D. C., also entered appearances for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged with violation of Title 33, Section 416 of the District of Columbia Code, which reads:

> "Any store, shop, warehouse, dwelling-house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such a common nuisance."

Trial was before a jury, which found appellant guilty, and he was sentenced.

At the trial it was shown by the Government that Williams had rented the basement apartment of 1738 8th Street, Northwest, from the owner of the premises. She testified that it was Williams who had personally paid her or her agent the rent. The Government's second witness, police officer Fillman, testified that he had gone to appellant's apartment on three separate occasions. That he had bought "two capsules" on November 13, 1951, at Williams' apartment from a James Le Grand. On November 15 Fillman again bought "two capsules" from Le Grand through an informer. The next night, November 16, Fillman took part in a raid on the apartment. The police found several persons in the living room. A search of these people and of the apartment produced two hypodermic needles, a syringe, stockings, and a spoon, known as a "cooker". On a bed under the corner of the bedspread was found "a plastic vial containing thirty-six capsules." Appellant was not seen on the premises by Fillman on any of these three occasions. Another police officer testified that the persons found in the apartment at the time of the raid were known to him as

drug addicts. He also stated that he had seen drug addicts there at another time prior to the raid. At the close of all the evidence a motion for judgment of acquittal was made by the appellant and was denied by the court.

In bringing this appeal sixteen assignments of error are made. We reach only one: the refusal of the trial court to grant the motion for a judgment of acquittal. Our decision on this question will dispose of the entire case.

The statute under which the Government proceeded is one which has never been judicially construed in this jurisdiction. This section of the Code is the same as Section 13 of the Uniform Narcotic Drug Act. Although it has been adopted in many states, we are unable to find any case construing it.

█ It is basic law that in a criminal prosecution the Government must prove, either directly or circumstantially, the various elements of the crime. Without that proof, a conviction cannot stand. In the present case the Government has totally failed to prove one of the essential elements of this crime. The statute in question sets out what is to be deemed a common nuisance. In essence it is a place "which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs." (We are not concerned here with the illegal selling part of the statute, as such, as it was agreed by the court and counsel at trial that the Government was not proceeding under that part.) There was sufficient proof that the persons found on the premises were drug addicts. Also, the jury could reasonably infer from the presence of the various drug-taking paraphernalia that these persons were there for the purpose of *using* narcotic drugs—if the presence of narcotic drugs had even been shown. But after a careful study of the record, we are unable to find any such proof.

Officer Fillman stated that on three different occasions he either bought or found capsules in appellant's apartment. He fur-

ther testified, "We went there originally to buy narcotic drugs and which I did." But this was merely a conclusion on the part of the officer because the Government never contended that he was a chemist or that he possessed any knowledge or training that would qualify him to testify as to the drug content of the capsules, if any. Recently we have held that a police officer who qualifies may testify to the fact that he has tasted a liquid and identified it as whiskey, and such testimony will go to establish the corpus delicti.[1] It has also been recently held that the testimony of the drug addicts themselves based on their sight and taste that the substance involved was really narcotic drugs adequately proved the corpus delicti.[2] In the present case, as far as the testimony shows, the confiscated substance was not even submitted to such a simple test.

Officer Fillman further stated that the capsules seized in the raid were sent to the chemist. But there was no testimony either by the officer or a chemist as to any chemical analysis ever being made. The usual procedure in a narcotics case is to have an expert testify to the fact that he made a chemical analysis of the substance, and that it was a narcotic drug, and further to have the narcotic itself introduced into evidence and identified with the defendant. Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697; Williams v. United States, 55 App.D.C. 239, 4 F.2d 432; People v. Brown, 92 Cal.App.2d 360, 206 P.2d 1095; State v. Mah Sam Hing, 89 Mont. 178, 295 P. 1014; Chin Gum v. United States, 1 Cir., 149 F. 2d 575. In Stadler v. People, 59 Colo. 159, 147 P. 658, 659, the court states: "That the powder contained cocaine must be proven as any other material fact beyond a reasonable doubt, before conviction can be had in this case."

At the trial the court stated to counsel for the Government that it presumed that Fillman's testimony would be supported by laboratory experts who actually analyzed the capsules and would testify as to their

1. Stagecrafters Club v. District of Columbia, D.C.Mun.App., 89 A.2d 876, 879, 80 W.L.R. 940.

2. United States v. Tramaglino, 2 Cir., 197 F.2d 928; cf. Pennacchio v. United States, 2 Cir., 263 F. 66.

drug content. But no such testimony was ever forthcoming.

The Government showed that the apartment here involved was resorted to by drug addicts; that certain paraphernalia was confiscated; and further, that capsules were purchased and found in the apartment. But not a single word of testimony was offered by the Government as to what these capsules contained nor were the capsules ever produced. The statute quite clearly states that a common nuisance is the keeping or maintaining of a place to which drug addicts resort for the *purpose* of using narcotic drugs. The Government failed to show that the drug addicts were in the apartment for the purpose of using narcotic drugs, as there was no testimony that narcotic drugs were or had been kept on the premises. In view of this failure we hold that the motion for judgment of acquittal should have been granted.

Reversed.