THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
RAÚL SERRANO NIEVES, Defendant and Appellant.

No. CR-65-155.     Decided January 31, 1966.

*Santos P. Amadeo* and *Antonia Hidalgo Díaz* for appellant.
*J. B. Fernández Badillo, Solicitor General,* and *Elpidio
Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant was accused of "unlawfully, wilfully, mali-
ciously and criminally, having in his possession and control
the narcotic drug known as heroin." He argues that the
information is insufficient for "it is necessary to allege that

the [defendant] was not authorized by the competent official to possess said drug." He is wrong.

■■ Our statute, unlike the federal, punishes the mere possession. *People* v. *Pellot Pérez*, 92 P.R.R. 792 (1965). But even under the federal statute, it is not required that the information allege that the defendant did not have a license to deal with drugs, *United States* v. *Palmiotto*, 347 F.2d 223 (2d Cir. 1965); *Chin Gum* v. *United States*, 149 F.2d 575 (1st Cir. 1945).

■ The question which we have just decided is the only one raised by appellant, but as it is the tradition of this Court in the exercise of its function to dispense justice, inspired by the provisions of the Act of March 12, 1903, 4 L.P.R.A. § 36, to the effect that "In its deliberations and decisions, in all cases, civil or criminal, [the Supreme Court] shall not be confined to the errors in proceeding [procedure] or of law only, as they are pointed out, alleged or saved by the respective parties to the suit, or as set fourth [forth] in their briefs and exceptions, but in furtherance of justice, . . . may also take cognizance of all the facts and proceedings in the case as they appear in the record, and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay." *People* v. *Aletriz*, 85 P.R.R. 621, 627 (1962); *People* v. *Túa*, 84 P.R.R. 37, 58 (1961); *People* v. *Rosado*, 78 P.R.R. 416, 419 (1955); *People* v. *Sanjurjo*, 73 P.R.R. 526, 531 (1952); *People* v. *Lugo*, 69 P.R.R. 37 (1948); *People* v. *Barrios*, 23 P.R.R. 772, 779 (1916); *People* v. *Lebrón*, 23 P.R.R. 611, 615 (1916); *People* v. *Díaz* (a) *Leña Verde*, 10 P.R.R. 441, 448 (1906); in criminal and civil cases *Dávila* v. *Valdejully*, 84 P.R.R. 97 (1961); *Reyes* v. *Reyes*, 76 P.R.R. 266, 275 (1954); *Rivera* v. *Heirs of Lugo*, 42 P.R.R. 183, 187 (1931); we have carefully examined the evidence introduced in support of the

information for the purposes of determining whether defendant's guilt was established beyond a reasonable doubt.

■ The only witness who testified at the trial was an Internal Revenue agent of the Treasury Department.[1] Appellant introduced no evidence because in his opinion the one adduced in support of the information was insufficient.

The agent states that he did not know the defendant, that before the day of the facts he did not know that he was an addict. The agent testified that on October 8, 1963 "at about 4:20 he was walking along San Francisco Street, had a cigarette in his mouth, unlighted, in front of Franklin's Store and as I was searching for matches defendant came out" ". . . from Franklin's Store with a package. . . ." "Simultaneously, I asked him for a match and he said something, he put the package between his legs and from this right pocket he took out a box of matches and he himself with his two hands opened the box of matches and when opening it I saw that it had two decks of alleged heroin." ". . . Immediately I tried to take hold of him and he fled. We ran a stretch from Franklin's Store and I overtook him and before reaching him in the stretch between Franklin's Store and the place I overtook him he put his hand in his mouth, I opened . . . Then I opened his mouth."

The prosecuting attorney asks him then "You say that you opened his mouth, and what happened then" to which he answers: "Well, apparently he had swallowed the deck." "You did not see the deck?" He answers "No, sir." He continues "I left him and continued walking along the stretch we ran and near the store I found the deck I had seen on him, a yellow deck." He states that "the color is quite different from the ones commonly sold, which are white, and that one is yellow." He states that he found the deck "on the stretch we ran between the sidewalk and where the cars

---

[1] It was stipulated that the chemist would testify that the evidence introduced was heroin.

go, near a car . . . on the edge of the street where the cars travel" that "he never seized it from [defendant]". and that he did not see the defendant throwing the deck away on the street.

It also appears from the evidence that the package which appellant put between his legs when he was going to attend to the agent's request contained 17 petticoats.

The evidence introduced in support of the information must leave great and grounded doubts in the conscience of the trier.

It is not easy to believe that the witness could see what the box of matches contained when appellant opened it to give him light. Likewise it is very improbable that the defendant would open the box of matches to give a light if he kept the decks of heroin therein. It was a very risky operation on San Francisco Street in old San Juan. The witness himself says that the color of the deck which he seized "is very different from the ones commonly sold which are white and that one is yellow." What justification did the witness have to try to arrest the defendant whom he did not know, for having seen in a box of matches—if it is true that he could notice it—a piece of folded yellow paper, a piece of paper of a color, according to his own testimony, different from the one commonly used to wrap drugs?

The witness did not seize any drug on appellant's person nor did he see the latter throwing away the deck which he seized on one of the most travelled streets of our capital. It is hard to believe that the defendant, while he was running, would have taken the decks out of the box of matches, swallowed one and thrown the other away on the street. The incriminatory element of flight does not appear satisfactorily connected with a guilty conscience for the possession of the drug. The evidence rather suggests its relation with the possible stealing of the 17 petticoats that appellant had in the bag he carried.

The evidence introduced by the State does not establish beyond a reasonable doubt appellant's guilt. We are conscious of our responsibility in the administration of criminal justice. In the discharge of that responsibility, both the social welfare and the individual security should weigh in our minds. The drug trafficking is ominous. It is a cancer which corrodes our social system. But it would be more disastrous to allow violation of personal liberty and of the certainty that one can only be deprived of freedom on evidence establishing guilt beyond reasonable doubt.

We would not be complying with our duty if, being fully convinced that the evidence in a certain case does not establish the guilt beyond a reasonable doubt, we would allow a judgment of conviction to prevail. When it does happen it is not a question of an intervention with the function of the judge or of the jury in the weighing of evidence, but an error of law. In the instant case we are not concerned with settling a conflict in the evidence, for the only evidence presented was the evidence of the People, but rather whether the content of the evidence introduced raises reasonable doubt as to defendant's liability.

We must recall here what we reaffirmed in *People* v. *Luciano*, 83 P.R.R. 551 (1961) under similar circumstances:

"Time and again we have held that the weighing of evidence made by the trial judge should be respected and upheld. We have only departed from this rule in cases of 'manifest error' in the exercise of such function, whenever a detailed examination of the entire evidence convinces us that the trier unjustifiedly discarded important probative elements or founded his criterion on worthless, or inherently improbable or incredible testimony."

The least that can be said in the instant case is that due to the nature of the evidence introduced, a reasonable doubt should have prevailed. Defendant shall be acquitted.

Mr. Justice Ramírez Bages dissented, Mr. Justice Pérez Pimentel concurring in his opinion.

—O—

MR. JUSTICE RAMÍREZ BAGES, with whom MR. JUSTICE PÉREZ PIMENTEL concurs, dissenting.

San Juan, Puerto Rico, January 31, 1966

I dissent from the decision of my brother Justice Dávila in this case to the effect that the evidence introduced does not establish appellant's guilt beyond a reasonable doubt. In effect he concludes that the jury's verdict was founded on "worthless, or inherently improbable or incredible testimony." Note that appellant never raised this question on appeal.

The testimony of the agent Víctor Flores Colón showed that appellant possessed the drug. If the facts on which that conclusion was based were credible or improbable, as the majority opinion indicates, it is incumbent upon the jury to decide and it decided it adversely to appellant. It is argued that it is difficult to believe that said witness could notice what the box of matches contained. And then it asks itself what justification did this witness have to try to arrest a person whom he did not know. Obviously the agent must have seen the folded envelopes in the box of matches and deduced that it was a question of carrying drugs for otherwise it cannot be explained that he tried to arrest and then pursued a person he did not know and that later he found out that that person was a drug addict. The determination of whether or not it was reasonable or probable for the agent to see some papers in the box of matches and to associate them with the drug envelopes commonly used by addicts was incumbent upon the jury and it actually did make such determination. It is true that the agent did not seize any drug on appellant. But there was circumstantial evidence that he possessed it when the agent tried to arrest him, consisting

in the agent's testimony that appellant put his hand to his mouth trying to conceal one of the envelopes and that the yellow envelope was found by the agent "on the edge of the street", "near the store" where the agent and appellant first met. It is argued that it is difficult to believe that appellant could have taken out the envelopes from the box of matches and swallowed one and thrown the other away while he was running; that the envelope seized could have been thrown by another person and that from appellant's flight it could be inferred that it was due to the fact that the package of petticoats which he also carried was merchandise stolen by him from the store from which he came out as he encountered the agent. It is true that the agent's testimony presented the aforementioned difficulties. I do not believe that it would be reasonable to infer that the flight was due to the fact that he had stolen the merchandise in question in the absence of evidence or the slightest suspicion of that fact, but rather to the fact of carrying drugs for the evidence showed that appellant was an addict and that one of the envelopes seen in his possession was found on the street. The flight in this case could be considered by the jury as revealing a conscience not exempt from guilt. *People* v. *Vega Santos*, 88 P.R.R. 264 (1963). But it was incumbent upon the jury and not upon this Court to weigh and gauge the evidence and to decide, according to its best criterion, whether the evidence introduced established appellant's guilt beyond a reasonable doubt. We do not believe that the evidence introduced is "worthless, or inherently improbable or incredible", as we said in *People* v. *Luciano*, 83 P.R.R. 551 (1961). Nor can we conclude that the evaluation nor the weighing of said evidence made by the jury is incorrect. *People* v. *Pérez Escobar*, 91 P.R.R. 9 (1964). Nor was the evidence clearly insufficient as determined in *People* v. *Maysonet Laureano*, 90 P.R.R. 485 (1964).

It is apparent that the majority opinion is based on several conjectures and assumptions and relying on them the Court has substituted the jury's weighing of the evidence. We do not believe that this is the most desirable action of an appellate court. Under the circumstances of this case and regardless of the reaction which the reading of the record thereof may cause on us, the rule of nonintervention in the conclusions of the jury which saw and heard witnesses must prevail. This case does not deal with the insufficiency of the evidence as the majority seeks to maintain, for the evidence introduced by the People, if believed, as it was, is sufficient to support the conviction.

For the reasons stated I believe that the judgment rendered in this case should have been affirmed.