WILBURN A. NELSON, Petitioner v. The STATE OF MONTANA, Respondent.

No. 10896

Submitted December 10, 1964. Decided December 30, 1964.

397 P.2d 700

William Dee Morris, Butte (argued), for appellant.

PER CURAM.

Wilburn A. Nelson, an inmate of the Montana State Prison, through his counsel, William Dee Morris, Esq., has filed a petition for a writ of habeas corpus, and counsel was heard ex parte thereon.

The petition recites the conviction of Nelson and states:

"That at said time and place the applicant did not have benefit of counsel, nor did the Court see fit to appoint counsel to represent applicant. That by reason of said act, the applicant was deprived of the Constitutional guarantee set forth in the Sixth Amendment of the Constitution of the United States of America, declaring that every person is entitled to benefit of counsel. That imprisonment and restraint of liberty resulting from such serious violation of a citizen's constitutional rights is illegal, and unwarranted."

Following recitation of previous applications the petition continues:

"That at the time of the applicant's arrest and trial, he was an alcoholic and had been one for a period of time in excess of four years. That at said time Wilburn Nelson was unable to intelligently discuss any matters relating to his personal life, business or attitute, and could not intelligently handle any of his own business. That he therefore could not intelligently waive counsel nor was he in a position mentally to seek counsel. He was a very sick man mentally and physically at the time of the trial and for a period of approximately two years thereafter. That a conviction based upon a plea entered by petitioner, Wilburn Nelson, without aid of counsel and in a case of this nature, is absolutely in violation of the Sixth Amendment of the Constitution of the United States as applied to the state under the due process clause in the Fourteenth Amendment thereof."

The petition is sworn to by the applicant averring:

"That he has read the contents of the within and foregoing petition and knows that the same are true to the best of his knowledge, information and belief."

There are two points raised by this petition, first that at the time of the entry of his plea of guilty, petitioner did not have benefit of counsel, "nor did the Court see fit to appoint counsel to represent applicant." Second, that he was an alcoholic and could not intelligently handle any of his own busi-

ness and therefore could not intelligently waive counsel nor was he in a position mentally to seek counsel.

These are not new contentions of petitioner as they have been raised in this court, in the Federal District Court, the Circuit Court and the United States Supreme Court, in one way or another. Petitioner has been prolific in filing petitions, and since this court, by reason of the record before it on the many applications made here, has not dwelt upon the fact situation existing in the district court records and those of this court and other courts, we will at this time endeavor to set forth that record.

We will discuss the first contention made by petitioner as above set forth, and we quote the official record of the arraignment of petitioner in the district court of Valley County, Montana. It should be noted here that petitioner obtained this official record himself and filed it in this court with his first petition on August 29, 1957.

This record reads:

"MR. WHITE: The County Attorney moves the Court for leave to file an information against one Wilburn A. Nelson.

"BY THE COURT: Motion for leave to file an information is granted and bail fixed in the amount of $10,000.

"You may stand up, Mr. Nelson. You are now before the Court to answer the information in this case which charges you with the crime of rape, a felony, alleged to have been committed in Valley County, Montana, on or about October 16, 1956, upon the person of one Marsha Raye Nelson. This procedure is known as an arraignment, that is, one charged with the commission of a crime as you now are must answer the information. In your answer to the information which charges you with the crime I have mentioned, that is, in your answer to the arraignment, you have the right to and you may move to set aside, demur or plead to the information. However, it is the duty of the Court to inform you of the fact that it is your right to have counsel,

442

that is, an attorney, before being arraigned. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: Before we proceed further I am informing and letting you know again that it is your right to have counsel before being arraigned. You are entitled to the aid of counsel.

"Let the minutes show the defendant has been fully advised as to his rights to have the aid of counsel, that is, an attorney.

"Do you have an attorney or counsel representing you?

"THE DEFENDANT: No, Your Honor.

"BY THE COURT: Do you desire the aid of an attorney?

"THE DEFENDANT: No.

"BY THE COURT: Well, you understand or at least I want you to understand and know that in a case of this kind this is a very, very serious charge, so that in a case of this kind involving the crime of rape, which is a felony, and with the commission of which you now stand charged, the Court is empowered to appoint an attorney for you if you have no money or property or means with which to employ one. You say you don't want counsel; is that right?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: You understand what I have just told you?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: That the Court is empowered to appoint an attorney for you if you don't have one and you still want one. You don't wish the Court to appoint an attorney for you?

"THE DEFENDANT: No, Your Honor.

"BY THE COURT: How old are you?

"THE DEFENDANT: Thirty-seven.

"BY THE COURT: Well, you are old enough to know whether you want an attorney or not.

"Let the minutes in this cause show that this defendant has

been fully informed as to his rights to counsel and that in addition the Court has informed this defendant that if he wanted counsel and was without means of employing counsel the Court would appoint counsel for him, but regardless of that advice the defendant still advises the court that he does not want counsel. Have I correctly stated that?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: The information in this case was just filed, and under the law it is my duty to inform you of the fact you are entitled to a reasonable time to answer the information, the information, in other words, being the complaint which charges you with the crime I have mentioned. Now, this reasonable time, if you require it, must not be less than one day. In other words, you are entitled to not less than one day to answer the information if you require that time, and at that time, as I have heretofore stated, in your answer to the arraignment you may move to set aside, demur or plead to the information. So I am informing you of the fact that you are allowed a reasonable time to answer the information and this must not be less than one day unless you waive that time or such time.

"Do you desire reasonable time before answering the information or do you waive any statutory rights as to time and consent to proceed at this time?

"THE DEFENDANT: I'll consent to proceed at this time, Your Honor.

"BY THE COURT: In other words, you waive time to answer the information and consent to proceed with the arraignment at this time?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: Let the minutes show the defendant waives time to answer the information and consents to answer the information at this time.

"The information in this case charges you with the commission of the crime of rape, a felony, and in the information you

are charged under the name of Wilburn A. Nelson, that is to say, W-i-l-b-u-r-n for your first or given name, the letter 'A.' for your middle initial and N-e-l-s-o-n for your last name, being Wilburn A. Nelson. Is that your true and correct name?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: Let the minutes show the defendant's true and correct name is Wilburn A. Nelson and is as his name is set out and spelled in the information and that all subsequent proceedings in this cause be had against the defendant under his said name.

"Now, Mr. County Attorney, you will deliver to this defendant a copy of the information in this case and likewise read it to him.

"MR. WHITE: (Reading) In the District Court of the Seventeenth Judicial District Of The State Of Montana, In And For The County Of Valley. The State of Montana against Wilburn A. Nelson, Defendant. Information.

"In the District Court of the Seventeenth Judicial District of the State of Montana, in and for the County of Valley, on this, the 18th day of October, 1956, in the name and on behalf and by the authority of the State of Montana, Wilburn A. Nelson, is accused by the County Attorney of Valley County, Montana, by this Information of the crime of Rape, a Felony, committed as follows: That at the County of Valley, in the State of Montana, on or about the 16th day of October, 1956, and before the filing of this Information, the said Wilburn A. Nelson, then and there being, did then and there wilfully, wrongfully, unlawfully, and feloniously have sexual intercourse with Marsha Raye Nelson, a female, who was then and there under the age of eighteen years, to-wit: of the age of twelve (12) years, the said Marsha Raye Nelson not then and there being the wife of the said Wilburn A. Nelson, all of which is contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Montana. Signed Gordon T. White, County At-

torney of Valley County, State of Montana. Witnesses for the State endorsed on the back of the Information are: Marsha Raye Nelson, Mabel Nelson, Brent Nelson, Sharon Nelson, B. P. Little, M.D., J. G. Browning, Roy Hatton and Harry Reed.

"BY THE COURT: Let the minutes show that as directed by the Court the County Attorney read the information to the defendant and at the same time delivered to the defendant a true copy of said information.

"Now, Mr. Wilburn A. Nelson, I ask you whether you plead guilty or not guilty to the information?

"THE DEFENDANT: I plead guilty, Your Honor.

"BY THE COURT: Has anyone, any officer or anyone else, made any promises or inducements to you that would cause you to enter a plea of guilty in this case?

"THE DEFENDANT: No, Your Honor.

"BY THE COURT: You realize, do you not, that the penalty in a case of this kind is quite severe?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: The penalty, in other words, is punishable by imprisonment in the state prison for not less than two nor more than ninety-nine years. Realizing the enormity of the offense with which you are charged and the severity of the penalty, you still plead guilty?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: Let the minutes show the defendant pleads that he is guilty of the offense charged in the information.

"Now then, Mr. Nelson, after a plea of guilty the Court must appoint a time for pronouncing judgment which, in cases of felony, must be at least two days after such plea. You are entitled as a matter of law to at least two days time prior to pronouncement of judgment. That two days' time, as I have heretofore stated you are entitled to before pronouncement of judgment and I could not, under any circumstances, pronounce judgment at this time even if I wanted to in view of your statu-

tory rights as to time. However, this statutory period of time may be waived by you and you may consent to have judgment pronounced at this time. Have I made myself clear in that statement?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: I therefore ask you, do you waive the statutory period of time of at least two days' time prior to the pronouncement of judgment and consent to judgment being pronounced at this time or do you wish judgment deferred for at least two days or any other time?

"THE DEFENDANT: I will waive the two days' statutory period, Your Honor.

"BY THE COURT: And you want judgment pronounced at this time.

"BY THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: Let the minutes show the defendant waives the statutory period of time for pronouncement of judgment following plea and consents that judgment be pronounced at this time. Now, is that correct, Mr. Nelson?

"THE DEFENDANT: Yes, Your Honor.

"BY THE COURT: All right. Now on this, the 18th day of October, 1956, after leave of court first had and obtained, the County Attorney of this county filed an information herein wherein and whereby you have been charged with the crime of rape, a felony, alleged to have been committed in Valley County, Montana, on or about the 16th day of October, 1956. Upon that information you have been duly arraigned and to that information you have entered a plea that you are guilty of the offense therein. I now ask you whether you have any legal cause to show why judgment should not be pronounced against you?

"THE DEFENDANT: No, Your Honor.

"BY THE COURT: Let the minutes show the defendant has no legal cause to show why judgment should not now be pronounced against him. You may be seated for a moment.

"Mr. County Attorney, what are the facts in this cause?

"MR. WHITE: In this case the defendant, Wilburn A. Nelson, is the father of a large family of children. They reside at Glasgow, Montana, at this time. They have not too large a house. Mr. Nelson is sleeping, I believe, outside at the present time in what is called a bunkhouse. The mother of the children, the wife of the defendant, is employed at the Johnnie Cafe, and she goes to work at a fairly early hour of the morning at the present time on her present shift at least, and on or about the 16th of October 1956, at the family home in Glasgow, Montana, the mother, Mabel Nelson, went to work at the usual time. The defendant had been doing some drinking over an extended period of time and through a pretex he managed to get the girl, Marsha Raye Nelson, his daughter of the age of twelve years, to stay at the home, ostensibly to do some ironing for the defendant. I believe his version was that he was going to go away and needed some clothing ironed; that a note was left with the boy, Brent Nelson, a son of the defendant, requesting that Marsha Raye Nelson, the twelve-year-old daughter, remain at their home inasmuch as Gunnar Brekke, the Probation Officer or the Juvenile Officer of this Court, was due to call upon them at a quarter to nine and would question her about some activities of the elder daughter in regard to the drinking of beer.

"There was no such an arrangement made with Mr. Brekke, and he was not due there at that time. However, Mr. Nelson has informed me that he intended to take the daughter to Mr. Brekke to discuss this beer-drinking episode with Mr. Brekke.

"However, the girl was ready to go to school at this time, and when she received the note from her father she remained as was requested and did not report at school.

"Later in the morning her older sister noticed that she wasn't at school and upon some telephone calls they ascertained that the girl didn't go to school at all, and the events that had taken place around nine o'clock were detailed to the mother

448

and she reported to my office. It seems that the defendant at that time in the family home at Glasgow, Montana, took the twelve-year-old daughter into the bedroom or in one of the rooms, at least on the bed, and had sexual intercourse with her at that time and place.

"The defendant has admitted to the officers and to myself that he had done this act.

"BY THE COURT: Is there any signed statement?

"MR. WHITE: Yes, I have a signed statement. From conversation with the defendant I have ascertained that there are probably other events or occasions on which he has performed this act of intercourse with this same daughter. There exists a question at this time also whether or not he has not had intercourse with Sharon Nelson, an older daughter of the age of fifteen years. That is not involved in this particular event, but I mention that for the information of the Court.

"The girl, Sharon Nelson, has indicated to me and to her mother that she also has been raped by her father.

"BY THE COURT: This statement was signed by this defendant?

"MR. WHITE: It was, Your Honor.

"BY THE COURT: And in the presence of Mr. Browning, yourself and Mr. Hatton, Mr. Browning being the Chief of Police and Mr. Hatton the Undersheriff of this county?

"You may stand up, Mr. Nelson. You have heard the statement of the County Attorney. Is his statement correct?

"THE DEFENDANT: Yes, Your Honor."

█ It is observed that the court did everything possible to have petitioner aware of his right to counsel and so far as any statement that the court did not see fit to appoint counsel for applicant it is a bald untruth, and the record discloses that the court endeavored in every way to get petitioner to accept counsel but he at all times declined.

For obvious reasons, the petition of August 29, 1957, being

without merit, the application was denied by order of September 12, 1957.

We will turn to the second contention that petitioner could not intelligently waive counsel because of his mental condition.

Another petition for a writ of habeas corpus was filed in this court on January 29, 1959, and among other things he contended that his mental capacity should have been determined as well as his qualifications as to fitness and education before he was allowed to enter a plea and that he should have had counsel appointed before he was allowed to enter a plea; also that the district court was without jurisdiction until petitioner's mental capacity had been determined; that he should have been given opportunity to fully examine all witnesses for the state; that he should have been fully instructed as to his rights to a jury trial and the degree of proof required for an acquittal under a not guilty plea.

In view of the contentions made in the prior application and the record of the district court his application was deemed without merit and was denied on March 7, 1959. See In re Nelson, 135 Mont. 596, 337 P.2d 373.

On July 20, 1959, petitioner filed numerous petitions with this court, together with one for habeas corpus wherein he contended that he was mentally incapacitated and unable to overcome undue influence used on him and that his aggravation of a latent insanity by use of liquor and drugs rendered him totally unfit to make any intelligent determination of any thing and especially his own insanity, and that a sanity determination of him by the court was indicated. He again contended that the court was without jurisdiction because of (1) failure to appoint counsel; (2) failure to provide for confrontation of state's witnesses; and (3) failure to provide the benefit and protection of a trial by jury.

By order of this court on September 1, 1959, his petitions were denied. See Petition of Nelson, 135 Mont. 603, 343 P.2d 564.

Petitioner then petitioned the Supreme Court of the United

States for a writ of certiorari and such petition was denied on June 27, 1960.

In December of 1960, petitioner presented to the United States District Court, Butte Division, a petition for a writ of habeas corpus, and since the substance of the petition is recited in the order of that court dated December 6, 1960, we quote:

"Wilburn A. Nelson, an inmate of the Montana State Prison, has petitioned this court for a writ of habeas corpus on the ground that he is held in custody in violation of the Consitution of the United States. This court has jurisdiction under 28 U.S.C.A. § 2241(c) (3).

"Permission is granted to file the petition without prepayment of costs and fees.

"On October 18, 1956, petitioner entered a plea of guilty to an information filed in the District Court of the Seventeenth Judicial District of the State of Montana, in and for the County of Valley, wherein he was charged with the commission of the crime of rape on October 16, 1956. Petitioner was sentenced to imprisonment in the Montana State Prison for a term of seventy-five years.

"The substance of the petition before this court it that at the time of his confinement and arraignment and plea the petitioner was in such mental condition that he was incompetent to enter a plea of guilty or waive his right to counsel by reason of his suffering from 'Korsakoff's psychosis and encephalasthenia, due to excessive use of alcoholic liquors and drugs'; that he was held in the county jail for forty-four hours and interrogated for hours at a time by as many as four officers; that he was not given a preliminary hearing; that under 'duress and undue influence he was compelled to plead guilty and sign a statement admitting guilt' before the officers would bring him into court; that he was promised by the county attorney that 'he would be taken before the judge and com-

mitted to a state mental hospital for cures if there were no arguments presented by the defendant while in court.'

"On August 29, 1957, a petition for writ of habeas corpus was filed in the Supreme Court of the State of Montana and denied by that court on September 12, 1957. On January 29, 1959, a second petition was filed in the Montana Supreme Court and denied on March 18, 1959 (135 Mont. 596, 337 P.2d 373). A third petition was filed on July 20, 1959, and denied September 1, 1959 (135 Mont. 603, 343 P.2d 564).

"Petition for certiorari in the Supreme Court of the United States was denied June 27, 1960 (In re Petition of Wilburn A. Nelson, No. 517 Misc., October term, 1959).

"The petition to this court recites that petitioner filed 'his first petition for state habeas corpus in the Powell County Court on January, 1958.' I have obtained from the court reporter of that court a transcript of the proceedings before the District Court of Powell County, Montana, from which it appears that a hearing on petitioner's application for writ of habeas corpus was originally set for February 10, 1958, continued at petitioner's request to February 17, and again continued at petitioner's request to March 3, 1958, the petitioner indicating to the court that he desired to hire a lawyer and expected to have the necessary money to pay the lawyer by that time. On March 3 the hearing was continued to March 10, 1958. On March 7, 1958, petitioner wrote the county attorney of Powell County, Montana, requesting a further postponement of the hearing, stating that he had prepared a petition of review to Judge Shea of the Seventeenth Judicial District Court, in and for the County of Valley. According to a letter from the court reporter, the court minutes show that a hearing was held on January 15, 1959 before the Honorable Sidney Stewart, Judge of the District Court of Powell County, at which petitioner was represented by Larry Doyle as his counsel; that after some discussion with the court, Mr. Doyle withdrew from the case; that there is no indication in the court minutes that

any testimony was offered at that time; that apparently the court felt it was without jurisdiction 'to entertain Mr. Nelson's writ on the ground that he wasn't before the proper court.'

"I have examined a copy of the transcript of the proceedings before the District Court of Valley County, Montana, on petitioner's arraignment and plea, and all of the records before the Supreme Court of Montana in connection with the various petitions before that court. In one or more (but not all) of the petitions before the Montana Supreme Court, the petitioner has raised the various questions now presented in his petition to this court.

"It is well-settled that 'a federal district court may decline, without a rehearing of the facts, to award a writ of habeas corpus to a state prisoner where the legality of such detention has been determined, on the facts presented, by the highest state court with jurisdiction, whether through affirmance of the judgment on appeal or denial of post-conviction remedies.' Brown v. Allen, 344 U.S. 443, 465, 73 S.Ct. 397, 97 L.Ed. 469.

"The transcript of the proceedings on arraignment and plea shows that the information was filed on October 18, 1956, pursuant to leave granted by the court; that at the arraignment and plea petitioner was fully advised by the court of his right to counsel and freely waived that right; that upon petitioner's entry of a plea of guilty, the court inquired whether 'any officer or anyone else made any promises and inducements to you that would cause you to enter a plea of guilty in this case,' to which the plaintiff replied, 'No, Your Honor.'

"Under the Constitution of the State of Montana, Article III § 8, criminal actions in the district court 'shall be prosecuted by information, after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without such examination or commitment, or without such leave of the court.' It is well-settled that the court has a right to grant leave to file an information, as was done here, without previous examination by a committing mag-

istrate. See State ex rel. Juhl v. District Court, 107 Mont. 309, 84 P.2d 979 [120 A.L.R. 353], and cases there cited. There is accordingly no merit in petitioner's complaint that he was denied a preliminary hearing.

"The Montana Supreme Court denied the original petition on the record of the state court of Valley County, consisting of the information and transcript of the proceedings on arraignment and plea. Subsequent petitions were denied on the basis of the prior action of the court. The proceedings before the state court of Valley County were in all respects regular and afford no basis for review in this court.

"It does not appear, however, that in connection with any of the various petitions for writ of habeas corpus in the state district or appellate courts there has been any bearing on petitioner's contentions (1) that he was mentally incompetent to enter a plea of guilty and waive counsel; (2) that he was coerced by duress of the county officials to sign a statement admitting guilt before they would take him before the court; and (3) that he was promised by the county attorney that if he entered a plea of guilty he would be committed to a state mental hospital. I have concluded accordingly that the writ should be granted for a hearing limited to these contentions.

"Petition granted for a hearing limited to the issues set forth in the preceding paragraph.

"Done and dated this 5th day of December, 1960.
W. J. Jameson"
United States District Judge"

This order clearly raised for hearing petitioner's contention that he was mentally incompetent to enter a plea of guilty and waive counsel.

Following the proceedings in the Federal District Court the Honorable W. D. Murray, United States District Judge sitting on the hearing, made and entered Findings of Fact and Conclusions of Law and Order, and since they detail the matters now before this court we quote the same in full.

"Petitioner, an inmate of Montana State Prison, by order of this court dated December 5, 1960, was permitted to proceed in forma pauperis, and was granted a hearing on his petition. For the reasons set forth in the order of December 5th, the hearing was limited to the issues raised by petitioner's contentions that at the time of his plea and sentence in the State Court, he was (1) mentally incompetent to enter a plea of guilty and waive counsel; (2) coerced by duress of county officials to sign a statement admitting guilt before they would take him before the court; and (3) promised by the County Attorney that if he entered a plea of guilty, he would be committed to a state mental hospital. The hearing was set for December 27, 1960.

"Petitioner appeared pro se at the hearing on December 27, 1960, testified in his own behalf, and requested the issuance of subpoenaes for various witnesses. Subpoenaes were issued, and the hearing was continued until January 3, 1961, when the witnesses appeared and testified, and the matter was taken under advisement. On January 5, 1961, this Court made findings of fact and conclusions of law adverse to petitioner and ordered that he be remanded to the custody of the warden of the Montana State Prison.

"On January 12, 1961, petitioner made a motion for a new trial or rehearing on the ground, among others, that he was without counsel at the hearing on his petition. Neither in his petition nor on his appearance in court had petitioner requested the appointment of counsel, but such a request had been made in one of the numerous letters written by petitioner to the Court, and the Court inadvertently omitted to appoint counsel. Therefore, on January 13, 1961, the Court made an order vacating its findings of fact and conclusions of law, granting a rehearing, appointing counsel for petitioner, and setting the rehearing for January 25, 1961.

"Appointed counsel entered the case with zeal, and are to be commended for their efforts on behalf of petitioner. They

interviewed and arranged for the attendance of witnesses, including a psychiatrist from the Montana State Hospital at Warm Springs, and officials and inmates of the prison at Deer Lodge, as well as other witnesses. They interviewed petitioner at the prison, and also arranged to have him brought to Butte and lodged in the Silver Bow County jail several days in advance of the hearing so he would be available for consultation. They prepared and furnished the Court a legal memorandum in support of petitioner's position, and as evidenced by their thorough and discerning examination of the doctors who testified, they devoted a great deal of effort to the study of alcoholism and its effects upon the human body and mind. From the record of the case, it is apparent to the Court that these two conscientious, able attorneys must have devoted the major portion of their time and efforts between the date of their appointment on January 13, 1961, and the conclusion of the hearing on January 26, 1961, to this case, almost to the exclusion of their other business, all without renumeration of any kind, and the Court takes this opportunity to express its thanks and appreciation for their assistance to the Court and to the petitioner.

"In addition to the Court-appointed counsel, petitioner was represented at the rehearing by a third attorney of his own procurement, who is also an able attorney of many years experience in the practice of law in the State of Montana.

"The hearing consumed the better part of two days. Petitioner himself testified, and in addition, 11 witnesses were called in his behalf and testified. Oral arguments were presented by all of the counsel in the case, and petitioner was granted an opportunity to make a statement in his own behalf and he availed himself of the opportunity.

"On the 18th day of October, 1956, petitioner appeared before the District Court of the Seventeenth Judicial District of the State of Montana, in and for the County of Valley, at Glasgow, Montana, and was arraigned on the charge of rape

of his own 12 year old daughter. Petitioner waived the assistance of counsel and plead guilty to the charge. He was adjudged guilty upon his plea, and by order dated October 18, 1956, was committed to Montana State Prison for a term of 75 years, and he is presently confined pursuant to said order of commitment.

"It is defendant's contention that due to the excessive use of alcohol over a prolonged period of time, he was mentally incompetent to intelligently waive counsel or enter a plea of guilty; that he was coerced into entering said plea by the promise of the County Attorney that if he entered such plea, he would be committed to a mental institution; that prior to entering his plea, he had been required to execute a statement admitting guilt before the County Attorney would bring him before the Court; and that as a result of all of this, his detention under the judgment and commitment above referred to is in violation of his constitutional rights and without due process of law.

"Before reviewing the evidence presented by petitioner in support of his contentions it might be well to consider the controlling legal principles. Under Article III, Section 16 of the Montana Constitution, and under the Fourteenth Amendment to the Constitution of the United States, a defendant in a criminal case in the State Courts of Montana is entitled to the assistance of counsel at all stages of the proceedings, and if he is unable to provide his own counsel, the Court must provide counsel for him. But a defendant may waive his right to counsel, provided it is waived intelligently, understandingly and in a competent manner. McDonald vs. Hudspeth [10 Cir.], 108 Fed.2d 943; Johnson vs. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; Walker vs. Johnson, [Johnston], 312 U.S. 275 [61 S.Ct. 574, 85 L.Ed. 830]. There is a strong presumption against the waiver of the constitutional right to counsel, and the law imposes upon the trial court accepting such a waiver a heavy duty and responsibility to determine that

such waiver is understandingly and intelligently made. Johnson vs. Zerbst, supra; Von Moltke vs. Gillies, 332 U.S. 708 [68 S.Ct. 316, 92 L.Ed. 309]. In Johnson vs. Zerbst, supra, [304 U.S.], at page 465 [58 S.Ct. at page 1023], the Supreme Court said:

" 'While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record.' To be valid, the waiver must be made with an understanding of the nature of the charge, the range of allowable punishments thereunder, possible defenses, and all other circumstances essential to a broad understanding of the whole matter. Von Moltke vs. Gillies, supra.

"However, the burden of proof rests upon one seeking to set aside a judgment. In Walker vs. Johnson [Johnston], supra, [312 U.S.], at page 286 [61 S.Ct. at page 579], the Supreme Court said:

" 'If he did not voluntarily waive his right to counsel, or if he was deceived or coerced by the prosecutor into entering a guilty plea, he was deprived of a constitutional right. On a hearing he would have the burden of sustaining his allegations by a preponderance of evidence.'

"And in Johnson vs. Zerbst, supra [304 U.S.], at 468 [58 S.Ct. at 1025], the Supreme Court points out:

" 'It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to the assistance of counsel.'

"With these legal guides in mind, the Court has considered

and weighed the evidence, and has come to the conclusion that petitioner has not carried the burden of proof placed upon him in order to set aside the judgment of conviction.

"At the time of his conviction, petitioner was 37 years old. He had graduated from the eighth grade and started the first year of high school, which he did not complete. After leaving school, he had worked three of four years as a farm laborer, and then went to work on a railroad, first as a roundhouse laborer and then as a railroad fireman. In 1944 he served in the U.S. Navy for approximately six months and was honorably discharged due to a knee injury which he sustained. He returned to work for the railroad, but was discharged in 1948 because of garnishments filed against his wages. From that time until his conviction, he was employed at various jobs in construction work, oil fields and farming.

"Petitioner's testimony presents a sorry picture of the moral and spiritual disintegration, the economic distress, the marital discord and juvenile delinquency that all too frequently result in a family from the excessive use of alcohol by the father and head of the family. It is unnecessary to recite all the sordid details, or even to consider them in connection with the issues in this case now before the Court, except as they establish the fact that petitioner was addicted to the excessive use of intoxicating liquor. He testified he had started out as a sporadic drinker in his youth, but by 1956, and for some years prior thereto, he was consuming a fifth of whisky and more every day. While the record leaves no doubt that petitioner was an excessive drinker for a long period of time, there are circumstances which are discussed below which lead the Court to believe either that his consumption of alcohol was not to the extent he claimed, or if it was, that it did not have the physical and mental effect upon him that might be supposed.

"Petitioner consulted his family physician in late 1955, and again in April, 1956, with reference to the knee he had injured in the Navy. On the occasion in April, 1956, petitioner ex-

pressed some concern to the doctor concerning his drinking problem, but at that time felt he could handle liquor as well as he ever could. At that time the doctor performed a complete physical examination of petitioner. In that examination the doctor found no evidence of physical or mental effects on petitioner as a result of alcohol, and merely cautioned petitioner to slow down on his drinking. Immediately thereafter petitioner was admitted to a Veterans Administration hospital for an operation on his knee. The doctor testified that on the occasion of this hospitalization no mention was made in the hospital reports he received of any condition of petitioner, physical or mental, attributable to excessive use of alcohol.

"In the latter part of August or first part of September, 1956, petitioner was treated at his home by the same family physician for an upper respiratory infection. Toward the middle of September, he again consulted the physician and was hospitalized for two or three days at Glasgow with an upper respiratory infection and bronchial infection. Petitioner was released from the Glasgow hospital at his own request, apparently prematurely, and suffered a relapse and was admitted to the Veterans Administration Hospital at Miles City, Montana, on September 18, 1956, complaining of a severe cough and laryngitis. He was discharged from the V. A. hospital on September 27, 1956. On neither of these last two occasions in the hospital were any physical or mental symptoms of petitioner's addiction to liquor, or his sudden withdrawal therefrom, observed by the hospital attendants.

"In addition to this complete absence of any noteworthy medical symptoms of physical or mental injury to petitioner by reason of the excessive use of alcohol, the remarkable memory which petitioner displayed in his testimony as to dates, times, places, events and names leads the Court to believe that petitioner did not consume liquor in the quantity he claims, or that if he did, it did not so injuriously affect his mental capacity as to render him incapable of intelligently and com-

460

petently waiving his right to counsel and entering a plea of guilty.

"The offense with which petitioner was charged was alleged to have been committed on Tuesday, October 16, 1956. In the week prior thereto, petitioner worked for five and a half days on a ranch outside of Glasgow. He left the ranch Saturday afternoon intending to meet his father and go hunting. He drove to Glasgow and bought, as he testified, whisky, vodka, wine and a case of ale. Being unable to locate his father, he commenced drinking, and this continued Saturday afternoon and night, Sunday, Monday and Tuesday. Again the detail with which he relates his actions and the events of those four days makes it difficult for the Court to accept at face value his statements as to his degree of intoxication or the amount of liquor he consumed. At any rate, the offense occurred about nine o'clock Tuesday morning, after which petitioner continued his drinking and drove out of town. Upon his return to Glasgow that evening, petitioner was arrested at about eight o'clock and lodged in the Valley County jail. He remained in the jail Tuesday night, Wednesday, and until about four o'clock Thursday afternoon when he was brought into court and his plea of guilty was entered. Although it is not within the issues upon which hearing was granted by the order of December 5, 1960, it was established at the first hearing that petitioner was arraigned before a Justice of the Peace on Wednesday morning, and bond was set.

"Petitioner was questioned briefly by the County Attorney on Wednesday, and again on Thursday morning, and on Thursday morning he gave the statement admitting his guilt which was recorded by the District Court Reporter, transcribed by him, signed by petitioner and witnessed by the County Attorney, Glasgow Chief of Police and Valley County Undersheriff. It is this statement which petitioner contends he was forced to execute before the County Attorney would take him before the Court.

"It is not petitioner's contention that he was intoxicated at the time he signed the statement and at the time he waived counsel and entered his plea, and indeed such contention could not profitably be made because it was some 40 hours after his arrest that he signed the statement, and some 44 hours after his arrest that he waived counsel and plead guilty. Any intoxication, as such, would undoubtedly have passed in that length of time. Rather it is petitioner's position that he was so ill, nervous and upset from his sudden withdrawal from alcohol by his arrest and confinement that he was unable to comprehend his situation or to act intelligently. He claims that on his first night in jail he took two benzadrene pills which he had in his possession and got no sleep that night; that he was questioned incessantly the next day and shouted at by three or four officials, all the time becoming sicker and sicker. He claims that as a result of such illness his physician was called and visited him in jail on Wednesday, but gave him no treatment; that his illness increased and the questioning continued the next day, Thursday, and that he was promised if he would sign a statement, he would be taken into court and committed to the State Mental Hospital; that he signed such statement but knew nothing of its contents because of his illness and signed it only because of the incessant questioning and shouting and the promise that he would be committed to the State Hospital. Of his arraignment and plea in Court he says he knew nothing, but went along blindly with the County Attorney and Judge, amenable to any and all suggestions, just to get the matter over with and get some treatment in the hospital for his illness; that his illness and his physical and mental incapacity was the result of his withdrawal of alcohol because of his confinement.

"However, in addition to the fact that his sudden withdrawal from alcohol on the three occasions of his hospitalization within the six or seven months immediately preceding this caused no such violent reaction, the other evidence presented by

petitioner (the state produced no evidence) develops a different picture. The County Attorney states he talked only briefly with petitioner on Wednesday, and that to him petitioner appeared normal and in full control of his faculties. His own doctor, who saw him on Wednesday, testified to the same effect. The doctor testified in connection with his visit that petitioner had wanted to see him not for any physical ailment, but to inquire as to the possibility of having himself committed to the State Mental Hospital for a liquor cure rather than facing the charge against him. Petitioner's conversations with the County Attorney concerning the possibility of a commitment to the State Mental Hospital were in a similar vein. These attempts by petitioner to secure his commitment to the State Mental Hospital, rather than indicating any incompetency on his part, show an awareness of his situation and an attempt on his part to escape responsibility for the offense with which he was charged.

"The Chief of Police and Undersheriff who were present during the taking of his statement and witnessed the execution of it, and who were likewise present in court during the arraignment and plea, also stated that petitioner appeared normal and that he was responsive and coherent in his conversation. The Judge likewise stated in an affidavit that on his appearance in court, he was sober, not ill, not suffering from the effects of alcohol, and that he was polite and gave sane, intelligent answers to all questions propounded to him.

"These men, the Judge, the County Attorney, the Chief of Police, the Undersheriff, and petitioner's own family physician, are all mature, responsible men in the community. By virtue of their various occupations they are possessed of great experience in dealing with and observing persons under the influence of alcohol and suffering from its effects. The Judge, the County Attorney and doctor did not observe petitioner and pass on his condition as a stranger. All three had had previous contacts with petitioner within a very short time, the Judge

and County Attorney on matters in juvenile court, and the doctor as his attending physician. These men knew petitioner, they were familiar with his speech, his walk, his mannerisms, his appearance, and they were well qualified because of this familiarity to observe and judge petitioner's condition. At the times in question here, he appeared normal to them.

"The State Court transcript shows that on the arraignment the Judge explained the charge and the gravity thereof to the defendant. He informed him of the possible penalties, as the County Attorney had prior to taking the signed statement. The Judge informed him fully as to his right to counsel, and that the Court would appoint counsel for him if he was without means to employ counsel. On no less than three occasions during the proceedings the Court asked if petitioner desired counsel, and each time received a negative reply. Petitioner was examined by the Court as to whether any promises or inducements had been made to him by any officer or anyone else that caused his plea of guilty, to which petitioner replied in the negative. It is difficult to see how the Court could have gone any further than it did to ascertain that petitioner knew and realized his constitutional rights and the consequences of what he was doing.

"The transcripts of the statement signed by petitioner and of the proceedings in court indicate that petitioner was not merely an unthinking robot, accepting and agreeing to any suggestion that might be made. In the statement to the county attorney the question which elicited the admission of the offense was, 'And sometime around 9:00 o'clock or immediately following what, if anything, happened with regard to Marsha Raye Nelson?' to which petitioner replied, 'Well, I had Marsha iron me three shirts then, as I remember it, I went in the bedroom and had intercourse with her.' Later in the statement when a leading question was asked suggesting that petitioner had shoved the girl on to the bed, he emphatically denied he had shoved her, but asserted she got on the bed by herself.

Likewise, in discussion with the Court after the plea had been entered, when the Court suggested that such conduct had been going on for several years, petitioner again emphatically denied the suggestion as he also did when it was suggested that he had molested another of his daughters. This is not the picture of a man robbed of his intellect and devoid of his senses being blindly led to prison by indifferent public officials heedless of his rights.

"One other thing that indicated to the Court that petitioner was not the sick, nervous, trembling wreck that he testified he was when the statement was signed is his signature on the statement. A comparison of that signature with the signatures and writing of petitioner appearing on the numerous petitions and letters he has sent to this court from the penitentiary shows a striking similarity. There is no evidence whatsoever of any tremors or shakiness of hand in the signature of the statement made to the County Attorney.

"For the foregoing reasons the Court concludes that the detention of petitioner in the Montana State Prison pursuant to the commitment of the District Court of the Seventeenth Judicial District of the State of Montana, in and for the County of Valley, dated October 18, 1956, is in all respects legal and in accord with due process of law.

"Even before petitioner was returned to the Montana State Prison after his last hearing in Court, he had prepared and given to the U.S. Marshal returning him to the prison for filing herein a motion for a continuance of the hearing upon the ground of surprise and for calling of various additional witnesses together with a memorandum in support of said motion. At the commencement of the last hearing, petitioner was advised by the Court that if any problems concerning witnesses or anything else arose between him and his court appointed counsel, or between his court appointed counsel and his personal counsel, he should immediately advise the Court. No such advice was received by the Court. At the conclusion of the hearing, pe-

titioner was given the opportunity to make any statement he desired, and he did address the Court, but no mention was made of the matters contained in the motion for continuance. Under these circumstances the filing of said motion by petitioner pro se demonstrates a complete lack of good faith on petitioner's part towards the Court and towards his counsel who worked so diligently in his behalf. Not only is the motion made in bad faith, but it is without merit.

"THEREFORE, IT IS ORDERED and this does order that the motion of petitioner for a continuance of hearing be and the same hereby is denied.

"IT IS FURTHER ORDERED AND THIS DOES ORDER that the petition for Writ of Habeas Corpus be denied, the Writ of Habeas Corpus be quashed, and the said Wilburn A. Nelson is hereby remanded to the custody of Warden Floyd E. Powell, Montana State Prison, Deer Lodge, Montana.

"IT IS FURTHER ORDERED that the Clerk of this Court forthwith notify said petitioner, his court appointed counsel, his personal counsel, the Warden of the Montana State Prison, and the Attorney General of the State of Montana of these findings of fact and conclusions of law and order."

Following the entry of this order a Notice of Appeal was filed to the Court of Appeals for the Ninth District. On March 3, 1961, the United States District Judge considered the request for a certificate of probable cause and for leave to appeal *in forma pauperis* and in view of the entire record in the case the court declined to issue a certificate of probable cause and certified, pursuant to Section 1915, Title 28 U.S.C.A. that the appeal was not taken in good faith and denied the request for leave to appeal *in forma pauperis.*

On March 27th, 1961, the United States Court of Appeals for the Ninth Circuit likewise denied a certificate of probable cause.

Such constitutes the record of this petitioner.

However, his counsel states that all these appearances before the courts were before the decision of the United States

466

Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, and that such decision holds that due process under the 14th Amendment requires that in every case, regardless of circumstances, the indigent accused must be granted counsel by the state court. We do not so read that decision. In its opinion the court stated:

"The Sixth Amendment provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense.' We have construed this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived.'' The court thereafter states that a provision of the Bill of Rights which is fundamental and essential to a fair trial is made obligatory upon the states by the Fourteenth Amendment.

We think the opinion goes no farther than to hold that in a state court an accused may waive his right under the Fourteenth Amendment to be represented by counsel, provided that such waiver is intelligently and understandingly made.

Section 94-6512, R.C.M.1947, provides that if a defendant appear for arraignment without counsel he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court must assign counsel to defend him. This became the law of Montana in 1871 and there has been no deviation since. The district judge in this case emphasized to this defendant his right to counsel, that such counsel would be furnished him without cost, but petitioner declined any such counsel.

He swears on his oath here that the district court did not see fit to appoint counsel to represent him. We leave it to the findings and conclusions of the learned United States District Judge who painstakingly accorded petitioner every opportunity to present every claimed fact in his behalf and found that no

merit existed in any contention that his waiver of counsel was not intelligently made by one competent to know what he was doing. The United States District Judge closed his order by commenting upon the bad faith of petitioner.

Eight years have passed since petitioner entered his plea of guilty to a charge that he raped his own 12 year old daughter, who would now be a young woman of twenty years. Doubtless she has a new life, a new environment, and she and the other members of her family have tried to forget the incidents which led up to the confinement of petitioner. He would like now to bring back the heartaches of yesteryear but the claims he makes now have the old familiar ring and they have long since been held to be without merit, here and in other courts of our land.

There is no merit in his petition and the same is denied and the proceeding dismissed.

The Honorable FRANK I. HASWELL sat in place of Mr. Justice STANLEY M. DOYLE who deemed himself disqualified.