No. 13383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

STEPHON VINCENT BENITO HALLAM,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Robert W. Gabriel argued, Great Falls, Montana
Leslie W. Waite, III argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, argued, Helena,
Montana
J. Fred Bourdeau, County Attorney, argued, Great Falls,
Montana

Submitted: September 20, 1977

Decided **FEB 6 - 1978**

Filed: FEB 6 - 1978

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant was convicted of one count of arson and three counts of deliberate homicide in the District Court, Cascade County. From the judgment of conviction and the denial of his motion for a new trial, defendant appeals.

In the early morning hours of July 4, 1975, a fire occurred in an apartment house at 507 - 509 Fourth Street South, Great Falls, Montana. There were four separate apartments/the building, housing about ten people. At the time of the fire, Fred Cobb and his three half-sisters were occupying a second floor apartment at the head of the stairs. Cobb was sleeping on the couch and was awakened by the smoke. He opened the apartment door leading to the stairs but retreated from the heat and the smoke. He awoke one sister who was also sleeping in the living room, told her to get the others, and escaped by crawling out a window. The girls did not make it out and were asphyxiated.

On July 10, 1975, defendant, Stephon Vincent Benito Hallam, was arrested for setting fire to the apartment house and for the resulting deaths.

The apartment building where the fire occurred had been operated by one Virginia Heckman, who had been defendant's "girl friend". Defendant had at times stayed with Mrs. Heckman in her apartment in the building and at times had a key to her apartment.

There was testimony that three days prior to the fire Mrs. Heckman decided to terminate the relationship. There was also testimony that defendant had stated they had a "blowout", but defendant testified that he was not aware of any problem between them.

The fire was investigated by several members of the Great Falls fire department as well as the Great Falls police department. Debris was gathered from the area of the fire and examined at the

State Crime Lab in Missoula, Montana. The Lab determined the presence of a highly flammable liquid, a type of kerosene, from debris gathered in the front entryway outside Virginia Heckman's apartment door.

Howard Clos, Jr. is a nephew of defendant and a fireman for the city of Great Falls. He testified that defendant spent several hours on July 5, 1975, at the fire station talking to Clos. Defendant kept quizzing his nephew as to whether the fire department thought the fire was arson caused. Before leaving, he informed Clos, "the reason that I am really worried is because I did do it." He allegedly stated he piled garbage up and set the carpet on fire. He also indicated a belief that certain flammable liquids could be used to set a fire without being detected.

Defendant and a friend had removed a gas stove and replaced it with an electric stove at Mrs. Heckman's apartment at approximately the end of June, 1975.

The theory of the prosecution was that defendant deliberately set the fire for revenge against Mrs. Heckman. The theory of the defense was that defendant thought he was to blame for the fire as a result of changing the stoves and failing to do a proper job of wiring and capping off the gas.

Defendant was found guilty on all counts and sentenced to consecutive terms of one hundred years each on the three homicide counts and 20 years on the arson count.

Defendant presents eight issues on appeal:

1. The court lacked jurisdiction because of fatal errors in the affidavit for leave to file an Information.

2. The court erred in granting the prosecution's motion to amend Count IV of the Information after the defendant had entered a plea and during the jury selection;

3. The court erred in prohibiting all voir dire examination of potential jurors regarding the homicide charges and capital punishment;

4. The court erred in allowing the fire department witnesses to speculate as to the cause of the fire without the necessary evidentiary foundation and without having the question posed in the necessary hypothetical question form;

5. The trial testimony of Howard Clos, Jr. constituted surprise and should have been excluded;

6. The trial testimony of Howard Clos, Jr. should not have been admitted without a hearing to establish that it met constitutional requirements;

7. The court erred in allowing certain jury instructions that certain admissions of defendant constituted direct evidence and further, by refusing instructions regarding indirect and circumstantial evidence; and

8. The court erred in allowing the prosecution to speculate in closing argument about evidence not in the record.

The affidavit in support of the state's motion for leave to file the Information direct states, in pertinent part:

> "That on or about the 4th day of July, 1975, at Great Falls, Cascade County, Montana, the defendant herein, VINCENT STEPHON HALLAM, caused the death of Sherry Rose, Charlotte Rose and Charlene Rose, by setting fire to the premises at 509 - 4th Street South, Great Falls, Cascade County, Montana; that the defendant has admitted to having set the said fire by igniting flammable materials at or near the entry way to the said premises; that the investigation of the fire at these premises by the Great Falls Fire Department determined that the fire was caused by intentional means and that the origin was in the entry way of the premises.
>
> "That the State of Montana will prove by the testimony of the witnesses whose names are endorsed on the back of the Information, together with physical evidence obtained in the investigation and testing done thereon, as well as by the admission of the defendant herein, that the defendant, VINCENT STEPHON HALLAM, is guilty of the crimes of COUNTS I,

II and III: DELIBERATE HOMICIDE, A FELONY, in violation of Section 94-5-102(1)(b), R.C.M. 1947 as amended and COUNT IV: ARSON, A FELONY, in violation of Section 94-6-104(1)(a), R.C.M. 1947 as amended."

In order to obtain permission to file an Information direct in District Court, the state must satisfy the judge " * * * that there is probable cause to believe that an offense has been committed by the defendant * * *." Section 95-1301(a), R.C.M. 1947. Where, as here, a warrant of arrest is issued on the basis of the granting of the leave to file direct (section 95-1301(b)), a constitutional question arises. The Fourth Amendment forbids the issuance of a warrant of arrest unless probable cause is shown and supported by oath or affirmation. Giordenello v. United States, 357 U.S. 480, 485, 78 S.Ct. 1245, 2 L ed 2d 1503 (1958).

The existence of probable cause must be determined by the independent judgment of a detached magistrate. Aguilar v. Texas, 387 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L ed 2d 723 (1964). The Revised Commission Comment to section 95-1301 notes:

" * * * Obtaining leave to file an information is not a mere perfunctory matter, but rests in the sound discretion of the district judge. The application must be complete in itself, and contain such salient facts as will allow the district judge to make an independent determination that an offense has been committed. * * *"

The facts alleged by the county attorney in the affidavit are:

(1) Defendant caused the death of three persons by setting fire to the apartment building;

(2) Defendant admitted setting the fire by igniting flammable materials near the entrance;

(3) The Great Falls fire department determined that the fire was intentionally set; and

(4) The state believes it can prove the defendant guilty of the offenses charged.

In a series of cases following State ex rel. Juhl v.

- 5 -

District Court (1938), 107 Mont. 309, 84 P.2d 979, 120 A.L.R. 353, this Court has considered the proper procedure for the application and motion for leave to file an Information. Nelson v. State (1964), 144 Mont. 439, 397 P.2d 700; State v. Peters (1965), 146 Mont. 188, 194, 405 P.2d 642; State v. Corliss (1968), 150 Mont. 40, 430 P.2d 632. See also 25 Mont. Law. Rev. 135 (1963) and 26 Mont. Law. Rev. 9 (1964).

The Court in Peters noted:

" * * * This court has consistently held that leave to file is not a perfunctory matter, and that it must not be automatically granted. Sufficient facts must be presented to move the court's discretion to grant leave. (Citations omitted.)"

It should be noted that at the time of the request for an order to file direct, the trial court held an extended hearing thereon with briefs and oral argument. The hearing was to comply with the most recent United States Supreme Court decision in Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L Ed 2d 54 (1975), and the court found that sufficient information was produced to warrant the granting of the leave to file the Information and warrant of arrest.

We hold that the fact the affidavit revealed an admission to setting the fire (2) was sufficient along with (3), an indication that the fire was intentionally set to warrant the action of the trial court. Particularly in view of the fact a separate hearing was held after the issuance of leave to file the Information and warrant of arrest. This information was clearly sufficient to establish probable cause.

The Information filed in District Court July 10, 1975, charged defendant with three counts of deliberate homicide (one count for each person killed in the fire) and one count of arson. Defendant plead not guilty to all four counts. The arson count charged:

- 6 -

"That at the County of Cascade, State of Montana,
on or about the 4th day of July, A.D. 1975, and
before the filing of this Information, the said
defendant then and there being, did then and there
by means of fire, knowingly or purposely, without
consent, damaged or destroyed an occupied struc-
ture of Walter Peck, namely an apartment building
located at 509 - 4th Street South, Great Falls,
Montana, in violation of Section 94-6-104(1)(a),
R.C.M., 1947, as amended."

On the opening day of the trial, the county attorney's

motion was granted to amend the arson count to charge defendant

under subsection (b) rather than subsection (a) of the arson

statute:

"That at the County of Cascade, State of Montana,
on or about the 4th day of July, A.D. 1975, and
before the filing of this Information, the said de-
fendant then and there being, did then and there by
means of fire knowingly or purposely place Sherry
Rose, Charlotte Rose, and Charlene Rose in danger
of death, in violation of Section 94-6-104(1)(b),
R.C.M. 1947 as amended;"

Defendant contends this amendment was a matter of sub-

stance and in violation of section 95-1505(b), R.C.M. 1947:

"(b) The court may permit any charge to be amended
as to form at any time before verdict or finding
if no additional or different offense is charged and
if the substantial rights of the defendant are not
prejudiced."

An amendment of an Information subsequent to pleading must

meet the two-pronged test set forth in State v. Brown (1976), _____

Mont._____, 560 P.2d 533, 535, 33 St.Rep. 820:

" * * * (1) such an amendment is only allowed
as to matters of form, and (2) only when no sub-
stantial right of the defendant is prejudiced. * * *"

This Court in Brown held that an attempted amendment of

a charge of aggravated assault by causing "serious bodily injury"

to aggravated assault by causing "reasonable apprehension of

serious bodily injury" was substantive and therefore not allow-

able. Accordingly, we hold the amendment should not have been

granted.

The District Court refused to allow defense counsel to

ask prospective jurors about their conscientous opinions regarding the death penalty. The court took the position that since the sentencing function rests solely with the judge, such inquiry is irrelevant.

Defendant notes that section 95-1909(4)(b)(viii), R.C.M. 1947, allows either party to challenge for cause, in a capital case, any juror having such conscientious opinions as would preclude finding a defendant guilty. It is difficult to see how defendant can complain that this statute was violated. The empaneling of such a juror could only be for his benefit.

Nor do the cases cited by defendant bolster his position. Defendant certainly has an unqualified constitutional right to a fair and impartial jury. State v. Russell (1925), 73 Mont. 240, 235 P. 712. But the defense has not shown how a juror's opinions either favoring or disfavoring capital punishment make such a juror more likely to convict defendant. The Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L Ed 2d 776 (1968) considered a jury selection process by which any prospective juror opposed to the death penalty could be challenged for cause. While the Court concluded such a jury could not constitutionally sentence a defendant to death, it expressly refused to reverse defendant's conviction on that basis. The Court could not find that such a jury substantially increased the risk of conviction. Witherspoon, supra, 391 U.S. at 517. See also Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L Ed 2d 797 (1968).

It is clearly within the rulings of Witherspoon and Bumper that inquiry be made as to such conscientious opinions of prospective jurors that would preclude them from finding a defendant guilty. Thus the state could complain with some merit about the restriction of voir dire in this case. There is no authority, however, for the proposition that such restriction is prejudicial

- 8 -

to defendant, and we decline to so hold.

The defense next contends the court erred in allowing fire department witnesses to speculate as to the cause of the fire without the necessary evidentiary foundation and without having the questions posed in hypothetical form.

It has never been the law that a hypothetical question is indispensable to the testimony of the opinion of an expert witness. The cases cited by defendant only require the witness to testify as to the facts upon which he bases his opinion. Boehler v. Sanders (1965), 146 Mont. 158, 404 P.2d 885; Irion v. Hyde (1940), 110 Mont. 570, 105 P.2d 666.

The witnesses in question were experts. They were testifying from facts revealed through investigation carried out by themselves and under their direction. They testified as to the facts and were available for full cross-examination. The District Court was correct in its ruling.

The defense claims surprise at the trial testimony of Howard Clos, Jr. Clos gave a statement July 10, 1975, which was made available to defense counsel and which detailed defendant's admission. Defense counsel also had the opportunity to interview Clos about the incident. At trial Clos quoted defendant as using certain profane and vulgar language which Clos had not previously mentioned. Clos, referring to defendant, stated:

> "He said that -- he says, 'I'll be back to burn
> that _____ out.' He says, 'If the _____ fire
> marshall hadn't of closed that building down,'
> he says, 'I would have been back today.'"

While the addition of the profanity may have been damaging to defendant, Clos's testimony did not differ in substance from his prior statement. Defense counsel had the opportunity to impeach Clos with the prior statement, and they did so. Defendant's claim of surprise is without merit.

The defense argues the trial testimony of Howard Clos

should not have been admitted without a hearing to establish that Miranda warnings had been given and that defendant's confession was voluntary.

The Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L Ed 2d 908, 1 ALR3d 1205 (1964) held that where the voluntariness of a confession is brought into question, a defendant has a constitutional right to a hearing on the voluntariness issue. Jackson is not applicable to the instant case. Here there was never an issue regarding the voluntariness of the statements. Defendant initiated the conversation with Clos. He never claimed his statements were in any/coerced. Defendant testified that his remarks must have been misunderstood by Clos, but did not even intimate that they were not voluntary.

Miranda warnings are necessary to protect the Fifth Amendment rights of an accused undergoing "custodial interrogation". Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L Ed 2d 694 (1966). The Supreme Court in Miranda noted:

> "By * * * custodial interrogation, we mean
> questioning initiated by law enforcement officers
> after a person has been taken into custody or
> otherwise deprived of his freedom of action in
> any significant way. * * *"

Clos was not a law enforcement officer. There is no indication that defendant was deprived of his freedom of action by anyone at the time the statements were made. No Miranda warnings were necessary.

Defendant cites as error the refusal of the District Court to give defendant's proposed instruction No. 2, an instruction that " * * * the evidence presented against the defendant is entirely circumstantial * * *."

Instructions on circumstantial evidence, such as the one offered here, are proper only when there is no direct evidence of the corpus dilecti. State v. Stoddard (1966), 147 Mont. 402, 412 P.2d 827; State v. Mah Sam Hing (1930), 89 Mont. 178, 295 P. 1014.

- 10 -

This Court has held that a confession constitutes direct evidence and that it is not error to refuse a circumstantial evidence instruction when there is testimony of a confession. State v. White (1965), 146 Mont. 226, 240, 405 P.2d 761.

Defendant contends the statement related by Clos is not a confession, but is an admission. A 'confession' is an admission of crime itself and an 'admission' concerns only some specific fact which, in turn, tends to establish guilt or some element of the offense. This distinction is clearly stated in Gladden v. Unsworth, 396 F.2d 373, (9th Cir. 1968).

Clos's testimony was that defendant told him that he "did it". In addition he said that if the fire marshal had not closed the building he would have gone back that day and burned it. This goes to the central fact of guilt and was a confession. The circumstantial evidence instruction was properly refused.

The final issue raised by the defense concerns the closing argument of the county attorney. According to the state's theory of the case, the fire burned for 30 to 40 minutes before it was put out. Under this theory, the fire would have had to have been burning at 5:10 a.m. when a fireman on his way to work passed near the location but did not see any smoke. The county attorney postulated that the smoke was not immediately visible because the doors to the entryway, where the fire started, were closed. Defense counsel objected to this on the basis that the evidence showed the front door was a screen door. His objection was overruled.

We find no error here. Both the prosecution and the defense presented their respective theories regarding the origin and timing of the fire. The jury is instructed as to what constitutes evidence. The state's theory was not an unfair inference from the evidence presented.

We affirm the three convictions on the homicide counts and reverse on count No. 4.

_____
                                Justice

We concur:

_____

_____
Justices

_____
Hon. LeRoy L. McKinnon, District
Judge, sitting in place of Mr.
Chief Justice Paul G. Hatfield.

I concur in the foregoing opinion, but not
all the statements contained therein.

- 12 -

Mr. Justice Daniel J. Shea dissenting:

In addition to reversing the arson conviction, I would also reverse the homicide convictions.

None of the charges in this case can withstand the scrutiny as to whether probable cause existed for the original arrest as is compelled by Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L ed 2d 1503 (1958). Nor can the convictions withstand the scrutiny of our own statutes relating to the requirement of probable cause.

In the context of this case, I would not reverse for the sole reason of not allowing the defense to inquire into the jurors' attitudes on capital punishment; nevertheless, I believe the District Court also erred in not allowing this inquiry, even though punishment is ultimately a function of the court. I believe the widest possible latitude on voir dire should be allowed the defense and prosecution in a criminal case. Voir dire examination is one of the most important (and most neglected) parts of the entire trial. In the interests of fairness it ought not be unduly restricted.

The question of whether there was probable cause for the filing of the information and, consequently, for the issuance of the arrest warrant, must be put in its proper perspective. This is not a situation where we are asked to review the sufficiency of the evidence to sustain the ultimate convictions obtained in this case. Rather, we are asked to determine if probable cause existed for the original filing of the charges and the issuance of the warrant of arrest. That inquiry must be confined solely to the application for leave to file the information (for no other evidence was offered at that time), and the answer must be a resounding "no".

To buttress the total lack of factual statements in the application, the majority relies on a hearing held _after_ the defendant was arrested. However, even this hearing did not include the taking of evidence. It was confined to briefs and oral arguments on the question of whether probable cause existed to arrest the defendant. Apparently, this hearing was held in order to comply with the requirements of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L ed 2d 54 (1975). It must again be emphasized that the hearing was held after the arrest and that no additional evidence was received.

We have, accordingly, a situation where the county prosecutor elected to rely on the sufficiency of his application for leave to file the information to justify the issuance of the arrest warrant. Where he fails in that regard, it is not our duty to bail him out simply because the ultimate convictions were supported by sufficient evidence. There was no law that required the prosecutor to stand on the sufficiency of the application for leave to file the information. He could have decided that the previous application was inadequate, dismissed the charge, and them immediately filed an application containing sufficient factual statements to justify a finding of probable cause. Having elected to stand on his original application, the prosecutor must have known that any ultimate convictions must withstand judicial scrutiny of whether probable cause was stated to justify the arrest and subsequent criminal proceedings. Needless to say, any evidence brought forth at pretrial hearings or the actual trial cannot relate back to the original filing to save a conviction.

The majority relies on four statements contained in the application for leave to file the information, but recognizes that only the second and third statements are applicable to a determination of the existence of probable cause. The majority summarizes the application as follows:

"The facts alleged by the county attorney in the affidavit are:

"(1) Defendant caused the death of three persons by setting fire to the apartment building;

"(2) Defendant admitted setting the fire by igniting flammable materials near the entrance;

"(3) The Great Falls Fire department determined that the fire was intentionally set; and

"(4) The state believes it can prove the defendant guilty of the offenses charged."

As to probable cause contained in these statements the majority concluded:

"We hold that the fact the affidavit revealed an admission to setting the fire (2) was sufficient along with (3), an indication that the fire was intentionally set to warrant the action of the trial court. Particularly in view of the fact a separate hearing was held after the issuance of leave to file the Information and warrant of arrest. This information was clearly sufficient to establish probable cause."

Contrary to these conclusions, I believe that the application is totally devoid of probable cause. By not addressing points (1) and (4), the majority tacitly agrees that they add nothing to establish probable cause. And surely they are correct in this analysis. The statement in (1) that defendant caused the death of three persons is a bald conclusion. Moreover, it does not indicate whether the deaths were intentionally caused or could have been accidentally caused. Likewise, the statement in (4) that the state believed it could prove the defendant guilty of the offense charged is a conclusion, adding nothing to the requirements of probable cause.

The statement in (2) that defendant admitted setting the fire by igniting flammable materials adds nothing to the requirement that the fire be deliberately set as opposed to accidentally set. And neither do we have any idea of the circumstances and context in which defendant allegedly made this statement. To whom did he make this statement? Was it a child, a policeman, a relative,

a friend, an eavesdropper?  Was the person reliable?  The record is silent on these questions.

The statement in (3) that the Great Falls fire department determined that the fire was intentionally set is also a mere conclusion.  When did the fire department determine this?  How was it determined?  What was the basis for making this determination?  Who made this determination?  Was there independent evidence linking defendant to the scene of the crime or with any of the occupants who were killed in the fire?  On these matters, the application is also silent.

The law requires, as the majority agrees, that there be factual statements contained in the moving papers so that the District Court can make an independent determination that probable cause does exist.  Here, the District Court had nothing but bald conclusions.  The majority interprets Aguilar, supra, to require that "the existence of probable cause must be determined by the independent judgment of a detached magistrate".  Here, there were no facts upon which the District Court could have made an independent judgment.  Moreover, the application flies in the face of section 95-1301, which the majority purports to follow.  The majority quotes with approval the following language from the Revised Commission Comment to section 95-1301, but then totally ingnores its application:

> " * * * Obtaining leave to file an information is
> not a mere perfunctory matter, but rests in the
> sound discretion of the district judge.  The appli-
> cation must be complete in itself, and contain such
> salient facts was will allow the district judge to
> make an independent determination that an offense
> has been committed.  * * * " (Emphasis added.)

I cannot imagine a more incomplete application than was filed in this case, nor a more perfunctory treatment by the prosecutor and District Court.  The application contained no facts, let alone salient facts, and for this reason the District Court was in no position to

-16-

make any independent judgment that an offense had been committed. There was no room for the District Court to exercise its discretion. Leave to file should have been denied as a matter of law. If the District Court performed its duties, and the prosecutor his, it would have been a simple matter for the prosecutor to refile and the District Court to approve a legally sufficient application. As matters now stand, these convictions cannot withstand an attack on the original probable cause required before the issuance of a warrant of arrest. The convictions should be reversed.

Daniel J. Shea
Justice